CORA L. KNIGHT *vs.* FRANK LAWRENCE.

Middlesex. March 2, 1954. — April 2, 1954.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Estoppel. Limitations, Statute of.*

A finding that the defendant in an action for personal injuries by an elderly woman was estopped from setting up the one year statute of limitations as a defence was warranted by evidence that on several occasions during the year allowed for bringing an action an insurance company adjuster authorized "to negotiate" for the defendant told the plaintiff that "good care" would be taken of her and not to worry, that some months before the expiration of the year he told her that "they would settle" her case and she "didn't need to do anything about" it, that a few days before the expiration of the year he told her that he knew the company would not pay as much as she then stated to him she wanted but that she "would hear from him again," that he did not communicate with her again before the expiration of the year, and that she did not consult a lawyer until after its expiration.

TORT. Writ in the Superior Court dated September 2, 1952.

The action was tried before *Paquet,* J.

*Hubert C. Thompson,* for the defendant.

*John H. Devine,* (*John W. Kickham* with him,) for the plaintiff.

SPALDING, J.  On November 7, 1950, the plaintiff was
knocked down and injured upon a public way in Lowell by
an automobile owned and operated by the defendant.  The
plaintiff, however, did not bring this action until September,
1952, which was after the expiration of the year allowed
for the bringing of such an action by G. L. (Ter. Ed.) c. 260,
§ 4, as amended.  The defendant pleaded the statute of
limitations.  The jury returned a verdict for the plaintiff,
which was recorded under leave reserved.  The defendant's
motions for a directed verdict and for entry of a verdict
in his favor under leave reserved were denied subject to his
exceptions.  The sole question presented by these excep-
tions is whether the evidence would warrant a finding that
the defendant was estopped from setting up the statute as a
defence.

The evidence most favorable to the plaintiff consists of
various statements allegedly made by one Sommers, an
adjuster for the defendant's insurer, who, it is agreed, had
"authority to negotiate with the plaintiff in behalf of the
defendant."  A summary of this evidence is as follows:  In
the latter part of November, 1950, Sommers first visited
the plaintiff, aged 77, at her home in Manchester, New
Hampshire.  This was several days after she had left a
hospital in Lowell where, following the accident, she had
been treated for a period of eighteen days.  He next visited
her while she was a patient in a hospital in Manchester.
On this occasion Sommers said to the plaintiff, "don't
worry, we are going to take good care of you."  Sommers
visited the plaintiff a second time at this hospital and he
asked her whether she "need[ed] any money for any pur-
pose." [1]  He also told the plaintiff "not to worry, that he
was going to take good care" of her.  The next visit of
Sommers was at the plaintiff's home (presumably in the
winter or spring of 1951) during which he told her that "he
would like to get these cases settled up as quickly as possi-

---

[1] The dates of these two visits at the hospital in Manchester do not appear
but they must have been between December 3, 1950, the date of the plain-
tiff's admission, and January 12, 1951, the date of her discharge.

ble," and "not [to] worry about anything" and that "they would take good care of . . . [her] throughout the whole thing." When asked by her counsel, "Now, do you remember in addition to what you have told us that he told you that you didn't need to do anything about your case, that they would settle it?" the plaintiff answered, "Yes, he did." During the latter part of October, 1951, when about a week or ten days remained in which to bring an action, Sommers called on the plaintiff and asked her if she would tell him what she wanted, and the plaintiff told him that she wanted "$10,000 for the rest of . . . [her] life." Sommers "looked at . . . [plaintiff] and said that he knew they wouldn't do that much, but he was going away to Boston and . . . [she] would hear from him again." Between the time of this visit and the running of the statutory period Sommers never communicated with the plaintiff. The plaintiff did not consult a lawyer until considerably more than a year after the date of the accident.

The plaintiff's position in essence is that the conduct of Sommers was such as to induce her to delay the bringing of the action and that by reason of this conduct the defendant is estopped from relying on the statute of limitations. In *McLearn* v. *Hill*, 276 Mass. 519, it was decided that a defendant may be estopped to set up the statute of limitations here involved, and the court observed that "fraud in its strict sense is not essential to estoppel" but an estoppel may be created not only by "fraud arising from an intention to mislead" but also by "words or conduct not consonant with fairness and designed to induce action by the plaintiff to his harm in nature not different from that caused by fraud in its grosser aspects" (page 527). But the words or conduct must be such that a reasonable man would rely thereon. *Tracy* v. *Lincoln*, 145 Mass. 357, 359. *Ford* v. *Rogovin*, 289 Mass. 549, 552.

In *McLearn* v. *Hill* the defendant, for his own convenience, shortly before the statute of limitations had run induced the plaintiff to discontinue an action seasonably brought in a Municipal Court, and to start a new action in the Superior

Court so that it could be tried there with a group of other cases arising out of the same accident. The plaintiff acceded to this request and discontinued the action in the Municipal Court and on the same day commenced a new action in the Superior Court. This occurred shortly after the statute of limitations had run and the defendant pleaded the statute in the new action. The foregoing facts were submitted in an offer of proof and the trial judge excluded it and directed a verdict for the defendant. This court held that the exclusion of the offer of proof was error.

The facts in *McLearn* v. *Hill* present a much stronger case for an estoppel than does the evidence in the case at bar. A case more nearly resembling the case at bar, and strongly relied on by the plaintiff, is *Hayes* v. *Gessner*, 315 Mass. 366. There the evidence was that at a time when the plaintiff had a good cause of action against the defendant the adjuster for the defendant's insurer persuaded the plaintiff not to seek legal advice and to wait until the bar of the statute fell by promising him that he could bring the matter up later and could have at least $1,500. The plaintiff relied on this representation. It was held that the jury could have found that the plaintiff was induced to refrain from necessary action upon representations that the offer was a continuing one, and that the delay was harmless and would not prejudice his rights. In these circumstances it was held that the defendant could have been found to be estopped from later taking a position at variance with the representations upon which the plaintiff relied. See also *Bergeron* v. *Mansour*, 152 Fed. (2d) 27 (C. C. A. 1), a case applying Massachusetts law to facts closely resembling those in *Hayes* v. *Gessner*.

While the evidence in the present case is considerably weaker than that in *Hayes* v. *Gessner*, we are of opinion that it made out a case for the jury. True, most of the representations made by Sommers did not go far enough to constitute an estoppel. For example such statements as "don't worry, we are going to take good care of you" and the like can hardly be said to be representations which

would reasonably justify the plaintiff in delaying the bringing of her action. But one of the statements of Sommers went beyond this. To the question "Now, do you remember in addition to what you have told us that he told you that you didn't need to do anything about your case, that they would settle it?" the plaintiff answered "Yes, he did." This, we think, could be found to suggest to the plaintiff that it would not be necessary for her to commence an action in order to preserve her rights. To be sure, no figure of settlement was mentioned by Sommers and the plaintiff made no promise to accept a settlement that might be proposed. And we are mindful that this statement was made several months prior to the expiration of the statutory period. It did not justify the plaintiff in delaying for an unreasonable time to assert her rights. See *Ford* v. *Rogovin*, 289 Mass. 549, 553. Perhaps under the doctrine of the *Rogovin* case the plaintiff would have had no case if Sommers had never communicated with her thereafter. But he saw her again in the latter part of October, about a week or ten days before the statute had run, and on that occasion, after the plaintiff had stated that she wanted $10,000 for the rest of her life, he told her that he knew his company "wouldn't do that much" but he was going to Boston and she would "hear from him again."

The present case is close to the line but we are of opinion it falls within the authority of *Hayes* v. *Gessner*, 315 Mass. 366, rather than *Ford* v. *Rogovin*, 289 Mass. 549.

*Exceptions overruled.*