WALTER T. KIRLEY, JR. *vs.* JAMES E. KIRLEY & another.[1]

No. 87-630.

Suffolk. February 17, 1988. — April 20, 1988.

Present: PERRETTA, SMITH, & FINE, JJ.

*Corporation,* Close corporation, Stockholder, *Fiduciary. Limitations, Statute of.*

A claim by a minority shareholder of a close corporation against the corporation and its majority shareholder, alleging that a corporate "freeze-out" had deprived the plaintiff of his employment and corporate office, was governed by the three-year statute of limitations applicable to actions of tort. [652-654]

In an action filed in 1981 by a minority shareholder of a close corporation against the corporation and its majority shareholder, there was no merit to the plaintiff's contentions that the effects of an alleged "freeze-out" constituted a continuing tort and that the statute of limitations therefore did not begin to run in 1975, when he was allegedly deprived of his office and employment with the corporation. [654-655]

CIVIL ACTION commenced in the Superior Court Department on November 10, 1981.

A motion for summary judgment was heard by *James J. Nixon,* J.

Leave to prosecute an interlocutory appeal was allowed in the Appeals Court by *Fine,* J.

*James V. Menno (Norman I. Jacobs* with him) for the defendants.

*Cornelius H. Kane,* for the plaintiff, was present but did not argue.

FINE, J. A minority shareholder in a close corporation brought an action in 1981 against the majority shareholder and the corporation. The complaint alleged, in count one, a cor-

---

[1] W.T. Kirley & Sons Lumber Company, Inc.

porate "freeze-out" effected by actions of the majority share-holder in 1975 depriving the plaintiff of his employment and corporate office, and, in count two, the wrongful depletion of the corporate assets, on unspecified dates, through improper loans and reimbursements to the majority shareholder. See *Donahue* v. *Rodd Electrotype Co.*, 367 Mass. 578, 588-589 (1975); *Wilkes* v. *Springside Nursing Home, Inc.*, 370 Mass. 842, 849-850 (1976); *Hallahan* v. *Haltom Corp.*, 7 Mass. App. Ct. 68, 70 (1979); Comment, The Strict Good Faith Standard — Fiduciary Duties to Minority Shareholders in Close Corporations, 33 Mercer L. Rev. 595, 596 (1982). In their answer and motion for summary judgment, the defendants contended that the tort statute of limitations (G. L. c. 260, § 2A) applied to the claims and that they were, therefore, untimely made. The plaintiff contended that the claims were timely because the six-year contract statute of limitations (G. L. c. 260, § 2) applied. Alternatively, the plaintiff contended that if the claims sounded in tort, they were continuing torts and, therefore, not time-barred. A Superior Court judge denied the motion for summary judgment, ruling that to determine which statute of limitations applied would require an evidentiary hearing, and that the filing of a motion for directed verdicts at the close of the plaintiff's case at trial would be the appropriate occasion on which to make that determination. A single justice of this court granted the defendants leave to take an interlocutory appeal.

The basic issue, whether the classic corporate "freeze-out" claim alleged in count one sounds in tort or contract for statute of limitations purposes, appears to be a novel one in Massachusetts. Only the defendants filed a brief on appeal. Thus, we have had the benefit of argument that a corporate "freeze-out" claim sounds in tort, but no argument that it sounds in contract. We acknowledge that disadvantage, although our own search has revealed no case in Massachusetts or elsewhere holding that such a claim sounds in contract. We recognize that a classic corporate "freeze-out" claim has some contractual aspects in that the rigorous fiduciary duty the principal sharehold-ers owe to minority shareholders in a close corporation arises

out of a relationship between shareholders in a close corporation which has been analogized to that between partners or joint venturers. Typically, however, there is no promise to be enforced, the duty is one imposed by law because of the nature of the relationship and not because of an agreement between the parties, and the claim is based upon intentional conduct designed to inflict injury on another. Thus, although the line between the two types of claims for these purposes is not sharp, we think a corporate "freeze-out" claim has more of the characteristics of a tort claim than of a contract claim. Cf. *Pancake House, Inc.* v. *Redmond*, 239 Kan. 83, 86 (1986) (discussing when a legal malpractice claim sounds in tort and when it sounds in contract). See generally Prosser & Keeton, The Law of Torts § 92 (5th ed. 1984). What authority exists supports the view that, absent an express agreement, a corporate "freeze-out" claim sounds in tort. In *Sugarman* v. *Sugarman*, 797 F.2d 3 (1st Cir. 1986), the court, interpreting Massachusetts law, viewed such a claim as an action in tort for the purpose of determining which statute to apply to calculate interest. See also *Miller* v. *Magline, Inc.*, 76 Mich. Ct. App. 284, 313 (1977), holding that a corporate "freeze-out" claim was governed by Michigan's tort statute of limitations rather than by a shorter statute applicable to corporate derivative actions.

Massachusetts courts have characterized somewhat analogous claims as torts, not contracts. Thus, for example, the tort statute of limitations was applied to a claim based on the wrongful appropriation of a corporate opportunity in violation of a fiduciary duty owed by majority shareholders who stood in a quasi-trustee relationship towards a minority shareholder. *O'Hara* v. *Robbins*, 13 Mass. App. Ct. 279 (1982). In shareholder's derivative suits, the alleged wrongs to the company determine the relevant statute of limitations and, thus, a shareholder's derivative suit for the conversion of corporate funds in a publicly-held corporation was held to be governed by the tort statute of limitations. *Woodcock* v. *American Inv. Co.*, 376 Mass. 169 (1978). See also *Moseley* v. *Briggs Realty Co.*, 320 Mass. 278 (1946) (the personal liability of a corporate director to a creditor of the corporation, pursuant to a State

statute, for the improper granting of liquidating dividends was held to be based upon an "equitable tort"); *Babco Indus., Inc.* v. *New England Merchants Natl. Bank,* 6 Mass. App. Ct. 929 (1978) (the tort statute of limitations barred an action in which the plaintiff claimed the breach of a bank's fiduciary duty to a corporation's shareholders arising out of the de facto control the bank exercised over the corporation).[2] Analogous cases from other jurisdictions also support our position. Note has been made of the growing common law trend to declare "that a breach of fiduciary duty is a tort." *Mack* v. *American Fletcher Natl. Bank & Trust Co.,* 510 N.E.2d 725, 738-739 (Ind. Ct. App. 1987) (addressing a claim of breach of fiduciary duty in the context of a trust, and citing numerous cases, including *Sugarman* v. *Sugarman* and *Babco Indus., Inc.* v. *New England Merchants Natl. Bank*). See also, e.g., *Russell* v. *Campbell,* 725 S.W.2d 739 (Tex. Ct. App. 1987) (breach of fiduciary duty in corporate setting governed by statute of limitations for injury to property).

The corporation was also named as a party defendant. If there were, in addition to the claim against the majority shareholder, a claim against the corporation based upon breach of an employment contract, express or implied, the claim, of course, would have been timely if brought within six years of the termination of the plaintiff's employment. The complaint, however, does not even vaguely state such a claim. Moreover, when the parties address the issue in their "Agreed Statement as the Record on Appeal," they make no mention of any claim against the corporation for breach of an employment contract.

Nor is there merit in the plaintiff's contention that the corporate "freeze-out" alleged in count one of the complaint was a continuing tort, and that the statute of limitations did not

---

[2] We note that, in the *Babco* decision, the court commented that "the underlying claim" in *Wilkes* v. *Springside Nursing Home, Inc.,* 370 Mass. at 842, was "clearly contractual in nature." *Babco Indus., Inc.* v. *New England Merchants Natl. Bank,* 6 Mass. App. Ct. at 930. The *Wilkes* case differs from the instant case in that the *Wilkes* plaintiff was seeking a declaration of his rights under an alleged express partnership agreement. *Wilkes,* 370 Mass. at 843. The instant plaintiff does not rely on any specific agreement.

begin to run, therefore, in 1975 when the majority shareholder allegedly acted to terminate the plaintiff's employment and to deprive him of his corporate office. The plaintiff may have suffered ongoing injuries following the actions of which he complained; that circumstance, however, does not transform the alleged wrongdoing into a continuing tort. See *Goldman* v. *Sears, Roebuck & Co.*, 607 F.2d 1014, 1018 (1st Cir. 1979); *Altair Corp.* v. *Pesquera de Busquets*, 769 F.2d 30, 32 (1st Cir. 1985). Contrast *Ahern* v. *Warner*, 16 Mass. App. Ct. 223, 226 (1983).

The parties do not refer in their agreed statement to the allegation in count two of the complaint that corporate assets were depleted by improper loans and excessive reimbursement for personal expenses made to the majority shareholder. No dates for those occurrences were alleged in the complaint, and, consequently, we are unable to determine whether count two is also time-barred. Accordingly, the order appealed from is vacated, judgment is to enter for the defendants on count one of the complaint, and the case is remanded to the Superior Court for further proceedings on count two of the complaint.

*So ordered.*