Fecteau, J.
The plaintiff brought this action seeking to compel arbitration of an underinsured motorist benefit claim on the motor vehicle insurance policy covering the automobile he was riding in as a passenger when it was involved in a single-vehicle accident. The defendant insurer has denied coverage on the ground that the statute of limitations expired without the claimant having filed his arbitration action. The plaintiff claims that the insurer is estopped to claim protection of the limitations period due to its having been engaged in settlement negotiations and because it unfairly and unlawfully lulled him into a false belief that it would not use the statute of limitations in defense.
This matter came on for trial, on count I of the complaint (count II of the complaint alleging a violation of G.L.c. 176D and 93A having been severed) on March 13, 1997, before me sitting without a jury. The parties were provided until March 21,1997, to file supplemental trial memoranda on the estoppel issue.
Upon consideration of the evidence, I make the following findings of fact and rulings of law.
FINDINGS OF FACT
1. On March 10, 1987, the plaintiff Robert Caron (“Caron”) was injured in a single-vehicle automobile accident when the vehicle he was occupying as a passenger went off the road. He thereupon retained legal representation for purposes of making claim against the tortfeasor and his insurance carrier, General Accident Insurance Company of America (“General”), the defendant herein.
2. At some time prior to November 13, 1992 the primary tort claim on the tortfeasor’s bodily injury insurance coverage was settled between the parties for the full amount of the bodily injury insurance limits of $25,000.00. A claim was made against General on behalf of Caron under the underinsured motorist benefits coverage insuring the vehicle in which Caron was a passenger (this accident having occurred prior to the change in the insurance policy language which now requires that policies insuring the claimant or those in the claimant’s household be exhausted first before any recourse be had to such coverage of an occupied vehicle).
3. Prior to November 13, 1992, Caron’s claim was being pursued by an associate of Attorney Frank Morgan; Attorney Morgan was the attorney to whom Caron had first brought this matter and the matter was assigned to an associate who was later disbarred. Attorney Morgan re-assumed handling this matter some time shortly before November 13, 1992. He examined the file and wrote a letter to General dated November 13, 1992 which it received. General did not respond in writing to the November 13, 1992 letter, but telephone calls were exchanged, thereafter wherein the claim representative of General, Thomas Luzier, and Attorney Morgan spoke. Although Luzier had neither memory nor file memoranda indicating the content of the telephone conversation, some preliminary information was given regarding the nature of the claim and a range of settlement value discussed to the effect that the settlement value was probably between $6000.00 and $8000.00. Attorney Morgan was asked to provide documentation of the “special damages" being claimed and a specific settlement demand. General made no offer of settlement.
4. On January 14, 1993, Attorney Morgan mailed a letter to General which General did not receive. This letter outlined the special damages alleged by Caron and made a “for the record" demand of $38,000.00, a figure which exceeded the range which he had discussed with Luzier during the earlier telephone conference. Although General had, at no time, indicated that the case was settled or that settlement was likely the parties had come to an understanding that the range discussed was reasonable and possible. What was also clear was that General asked for documentation for the purpose of confirming that the special damages were what was represented and that the case warranted an amount within the range. There was never any meeting of the minds as to whether the claim was settled or any specific amount of settlement.
5. No further communications of significance were made before March 11, 1993, the date on which the six-year statute of limitations period expired. There was never any indication or intimation by General that the statute of limitations would be waived, that the plaintiff need not make any filing in order to protect his claim as against the statute nor that the parties would continue to negotiate even after the statute would run.
*164 RULINGS OF LAW
The plaintiff contends that the defendant either waived or should be estopped from claiming the protection of the six-year contract statute of limitations, G.L.c 260, §2, on grounds that the parties were either engaged in serious settlement negotiations in which both sides were attempting, in good faith, to resolve the matter without litigation, or that the defendant was acting in bad faith, misrepresenting their intentions and, in fact, having the ulterior motive of stringing the plaintiff along until the statute of limitations ran.
“(E)stoppel would require proof that the defendants made representations they knew or should have known would induce the plaintiffs to put off bringing a suit and that the plaintiffs did in fact delay in reliance on the representations.” White v. Peabody Construction Co., 386 Mass. 121, 134-35 (1982) (citing LaBonte v. New York, New Haven & Hartford R.R., 341 Mass. 127, 131 (1960); MacKeen v. Kasinskas, 333 Mass. 695, 698 (1956); McLearn v. Hill, 276 Mass. 519, 525-27 (1931)). Chief Justice Rugg in the case of McLearn v. Hill, supra, explained the policy behind the doctrine of estoppel as follows:
It was decided in this Commonwealth almost one hundred years ago that the doctrine of waiver when supported by adequate facts was available to meet a defense founded on the statute of limitations. It was said [that] . . . “it may be waived by express contract or by necessary implication, or its benefits may be lost by conduct invoking the established principles of estoppel in pais . . . Also, it should be noted that while the doctrine of estoppel in pais rests upon the ground of fraud, it is not essential that the representations or conduct giving rise to its application should be fraudulent in the strictly legal significance of that term, or with intent to mislead or deceive; the test appears to be whether in all the circumstances of the case conscience and duty of honest dealing should deny one the right to repudiate the consequences of his representations or conduct; whether the author of a proximate cause may justly repudiate its natural and reasonably anticipated effect; fraud, in the sense of a court of equity, properly including all acts, omissions and concealments which involve a breach of legal or equitable duty, trust or confidence, justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another.”
McLearn v. Hill, 276 Mass. at 525 (citation omitted) (quoting Howard v. West Jersey & Seashore R.R., 102 N.J. Eq. 517, 520-21 (1928), affirmed, 104 N.J. Eq. 201 (1929)).
In LaBonte v. New York, New Haven & Hartford R.R., supra, the court held that the defendant’s words and conduct warranted a tolling of the statute of limitations. In that case, evidence existed that a claimant, aggrieved under the Federal Employers Liability Act had told his employer that he was going to make a claim and was therein told that he would be better off under the retirement system and that the railroad would take care of it. On a second occasion the claimant, when he told his superior that he had consulted a lawyer, was told that he should not have done that and they, recognizing that it was a serious case, were going to take care of it although it may take a while, but they would come back (at a point in time after the statute would have run). The claimant neither heard from the railroad again nor did he follow up with the lawyer until after the statute had run. The court explained:
Basically the ground relied on by the plaintiff to avoid the statute of limitations, whether described as waiver of the defense or estoppel (see concurring opinion of Magruder, J. in Bergeron v. Mansour, 152 F.2d 27, 32 et seq [1st Cir.]), is that “the statements of the defendant lulled the plaintiff into the false belief that it was not necessary for him to commence action within the statutory period of limitations . . . , that the plaintiff was induced by these statements to refrain from bringing suit, as otherwise he would have done, and was thereby harmed, and that the defendant ‘knew or had reasonable cause to know that such consequence might follow.’ ” Ford v. Rogovin, 289 Mass. 549, 552. It was said in McLearn v. Hill, 276 Mass. 519, at page 527 that “Proof of fraud in its strict sense is not essential to estoppel. The more modem statement is that ‘one is responsible for the word or act which he knows, or ought to know, will be acted upon by another.’ ” But as we said in Knight v. Lawrence, 331 Mass. 293, 295 “the words or conduct [which estop one from invoking the statute of limitations] must be such that a reasonable man would rely thereon.”
Labonte v. New York, New Haven & Hartford R.R., 341 Mass. at 131.
In Knight v. Lawrence, supra, the court also held a defendant estopped from claiming the protection of the statute of limitations, for having told an elderly claimant on several occasions that she should not worry, that she would be taken care of and that she need not do anything about her case and that they would settle it. Although the court stated that the remarks relative to not worrying, and that she would be taken care of were not the sort of “representations which would reasonably justify the plaintiff in delaying the bringing of her action," the court found that such statements, along with other conduct, namely the suggestion to plaintiff that she need not do anything to protect her rights and a visit shortly after the statute had run during which the claim representative for the defendant’s insurer told her that the company would not do as much as she was asking, but that she would hear from him again, warranted a finding of estoppel, notwithstanding that no settlement figure was men *165 tioned by the company and no indication was given by the plaintiff that she might accept a settlement that it might propose. The court agreed with the plaintiff in that “the conduct of Sommers was such as to induce her to delay the bringing of the action and that by reason of this conduct the defendant is estopped from relying on the statute of limitations.” Knight v. Lawrence, 331 Mass. at 295. The court explained:
In McLearn v. Hill, 276 Mass. 519, it was decided that a defendant may be estopped to set up the statute of limitations here involved, and the court observed that “fraud in its strict sense is not essential to estoppel” but an estoppel may be created not only by “fraud arising from an intention to mislead” but also by “words or conduct not consonant with fairness and designed to induce action by the plaintiff to his harm in nature not different from that caused by fraud in its grosser aspects” (page 527). But the words or conduct must be such that a reasonable man would rely thereon. Tracy v. Lincoln, 145 Mass. 357, 359. Ford v. Rogovin, 289 Mass. 549, 552."
Knight v. Lawrence, 331 Mass. at 295. The court then contrasted the facts presented to it with those facts in McLearn v. Hill, supra, and stated:
The facts in McLearn v. Hill present a much stronger case for an estoppel than does the evidence in the case at bar. A case more nearly resembling the case at bar, and strongly relied on by the plaintiff, is Hayes v. Gessner, 315 Mass. 366. There the evidence was that at a time when the plaintiff had a good cause of action against the defendant the adjuster for the defendant’s insurer persuaded the plaintiff not to seek legal advice and to wait until the bar of the statute fell by promising him that he could bring the matter up later and could have at least $1,500. The plaintiff relied on this representation. It was held that the jury could have found that the plaintiff was induced to refrain from necessary action upon representations that the offer was a continuing one, and that the delay was harmless and would not prejudice his rights. In these circumstances it was held that the defendant could have been found to be estopped from later taking a position at variance with the representations upon which the plaintiff relied. See also Bergeron v. Mansour, 152 Fed. (2d) 27 (C.C.A. 1) a case applying Massachusetts law to facts closely resembling those in Hayes v. Gessner.
Knight v. Lawrence, 331 Mass. at 295-96.
In the case at bar, the claimant was represented by experienced counsel who conducted all communications with the defendant’s representative. There were no representations made by the defendant which could be fairly interpreted to mean that the claimant need do nothing to protect his claim. There were no offers extended. The only reasonable and fair interpretation to the conversations between the parties is that a settlement range of $6000.00 to $8000.00 was being discussed, that it appeared on the face of it to be reasonable and if the documentation supported it, the company might make an offer at or near the range. There were no words or conduct of the defendant which could reasonably have been taken by the plaintiffs attorney to mean that the company would waive the statute, and any reliance on the conversations with the defendant, as testified to by the plaintiffs attorney and implying that settlement was likely, was not reasonable. These were not the kind of words which the caselaw has reported warrants the application of the doctrine of estoppel. Accordingly, a judgment in favor of the defendant is required.
ORDER FOR JUDGMENT
For the foregoing reasons, judgment in favor of the defendant General Accident Insurance Company of America, on count I of the complaint, shall be entered.