Jerrold DEISENROTH, Plaintiff,

v.

NUMONICS CORPORATION, Rolland Henderson, and Phillip Henderson, Defendants.

No. Civ.A. 97–11179–PBS.

United States District Court,
D. Massachusetts.

Feb. 27, 1998.

**154**

Mark P. White, White, White & Fudala, Lexington, MA, for Plaintiff.

Jody E. Forchheimer, Anthony E. Fuller, Bingham, Dana & Gould, Boston, MA, for Defendants.

### MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS

SARIS, District Judge.

### INTRODUCTION

This case arises out of the recapitalization of defendant Numonics Corporation ("Numonics") in March 1992. Five years later, on May 23, 1997, plaintiff Jerrold Deisenroth, a former shareholder and employee, brought this multi-count diversity action, which includes allegations of breach of contract and fraud against defendants Numonics, Rolland Henderson, Numonics' President and CEO, and Phillip Henderson, Numonics' Vice President. Deisenroth seeks restitution in the amount of $428,588.00, which he claims is the value of his shares eliminated by the recapitalization without compensation.[1] Defendants now move to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) on the ground the action is barred by the applicable statutes of limitations and pursuant to Fed.R.Civ.P. 12(b)(2) on the ground of lack of personal jurisdiction over the defendants. After hearing, Defendants' motion to dismiss is **ALLOWED** because the action is time-barred.

### BACKGROUND

For purposes of this motion, the Court "take[s] the well-pleaded facts as they appear in the complaint" and draws all reasonable inferences in his favor. *Coyne v. City of Somerville*, 972 F.2d 440, 442–43 (1st Cir. 1992). Furthermore, the exhibits attached to the complaint may properly be considered for Rule 12(b)(6) purposes. *See In re Lane*, 937 F.2d 694, 696 (1st Cir.1991); Fed.R.Civ.P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is part thereof for all purposes.").

In 1985, Deisenroth became the president and CEO of Pencept Corporation ("Pencept"), a Massachusetts corporation specializing in the field of computer technology. In 1987, he arranged a merger between Numonics, a Pennsylvania corporation, and Pencept. On May 14, 1987, Deisenroth, as President of Pencept, signed a "Common Stock and Subordinated Note Purchase Agreement" with a Massachusetts forum selection clause. In paragraph 7.4 of this agreement, Pencept granted to each "Purchaser," defined as "those listed in Exhibit A," a right of first refusal to purchase on a pro rata basis any "New Securities." (Ex. G.) "Exhibit A" listing the "purchasers" was not attached to the complaint. As part of the transaction, Deisenroth was to receive a $150,000 subordinated note and 323,824 shares of Numonics common stock.

After the Board of Directors approved the stocks and notes, an Intercreditor Agreement was signed by the major investors, including Deisenroth and the Hendersons, on June 8, 1987. (Ex. B.) This agreement, which also had a Massachusetts forum selection clause, governed the terms on which accelerated payments were made to the Hendersons and Pencept Investors who were holders of a series of ten year subordination notes. Once again, Schedule 1, which listed the Pencept Investors, was not included in the complaint.

After the Numonics–Pencept merger, Deisenroth offered his managerial services to

---

1. Deisenroth's seven count complaint alleges violations of Mass.G .L. c. 93A (Count I), fraud (Count II), breach of fiduciary duty (Count III), unjust enrichment (Count IV), breach of contract (Count V), breach of covenant of good faith and fair dealing (Count VI) and conversion (Count VII).

the new company, but Rolland Henderson rejected the offer. Subsequently, Rolland Henderson induced Deisenroth to re-negotiate his debenture and stocks by threatening to withhold stock certificates and by representing to Deisenroth that the stocks were a sound investment at a value of $2 per share. As a result, Deisenroth and Rolland Henderson, on behalf of Numonics, entered into a Termination Agreement on March 21, 1988, under which Deisenroth agreed to retire as an officer and member of the Board of Directors of the company. As part of this agreement, Deisenroth surrendered his $150,000 subordinated note and 129,540 shares of stock, thereby reducing his total holdings in Numonics to 192,294 shares of common stock. Also under this agreement, he received a salary, severance payments and other consideration for his services. (Ex. D.) The agreement contained the following representation: "Deisenroth represents and warrants that he has no claims against the Company, *except as may expressly arise under the terms of this agreement.*" (*Id.* ¶ 9 (emphasis added).) Further, this agreement was to be the entire agreement between the parties and was to be governed by Pennsylvania law.[2]

The defendants did not fulfill their obligations under the Termination Agreement. They made late payments to Deisenroth and eventually failed to make any payments to him at all. In 1991, Deisenroth recovered a $42,000 judgment against the defendants in Massachusetts state court for failure to comply with the terms of the agreement. *Deisenroth v. Numonics Corp.*, No. 90–8806 (Mass.Super.Ct.1990). Deisenroth brought suit in Pennsylvania to enforce this judgment and collected it from the defendants in 1992.

The acrimony did not end with that litigation. On or about March 18, 1992, Rolland Henderson circulated a memorandum regarding a proposed recapitalization of Numonics. The memorandum stated that "the

Company's currently outstanding common stock ('Old Common') will be eliminated, and no consideration will be issued or paid to the holders of such stock. . . ." (Ex. E.) As part of that restructuring, Numonics eliminated all 9,003,280 shares of "Old Common" stock held by all stockholders, including First Boston Investment, Allstate Insurance Company and Citicorp Venture Capital. At that time, Deisenroth still held his remaining 192,294 shares of "Old Common" stock, which represented approximately a two percent interest in the company. Deisenroth, however, did not receive the memorandum announcing the proposed recapitalization until April 13, 1992. There is no allegation that had he voted, his two percent ownership would have altered the outcome of the shareholders' ratification. Approval required the "consent of the holders of a majority of the shares outstanding of Old Common and the holders of two-thirds of the outstanding shares of Old Preferred." (Ex. E at 2.) However, Deisenroth was deprived of the right to oppose the termination of his shares. That same day, he received notice of the Consent to Common Shareholders, which was dated March 18, 1992, approving the terms and conditions of the recapitalization in their entirety. (Ex. F.) Deisenroth's entire interest in Numonics was eliminated by the recapitalization with no additional consideration or remuneration.

Throughout 1992, Deisenroth had continuing discussions via telephone, letter and fax with two directors of the company, Richard Dumler and David Seidman, regarding ways in which he might be repaid for the value of his eliminated stock. Despite these communications and promises to bring the matter to the Board of Directors, no agreement was ever reached. Another round of communications between Deisenroth and the directors resumed in the winter and spring of 1994, but again no agreement was ever reached. By the summer of 1994, the defendants no longer answered Deisenroth's letters, faxes

---

**2.** The Termination Agreement states:

"14. *Entire Agreement.* The terms and provisions herein contained constitute the entire agreement between the Company and Deisenroth. No agreement or understanding which alters, waives, modifies, cancels, discharges or extends this Agreement shall be binding upon the

Company or Deisenroth unless it is in writing and duly signed by the Company and Deisenroth.

15. *Governing Law.* This Agreement shall be governed by the laws of the Commonwealth of Pennsylvania, without reference to its principles of conflict of law."

and phone calls, and there has been no communication or discussion between the parties since. This action was filed on May 23, 1997.

## DISCUSSION

A complaint should not be dismissed for failure to state a claim upon which relief can be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Roeder v. Alpha Indus., Inc.,* 814 F.2d 22, 25 (1st Cir.1987) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### A. *Tort and 93A Claims (Counts I, II, III and VII)*

Deisenroth claims defendants committed fraud and deception on him: (1) by inducing him to cancel his ten-year note and retire his 129,530 shares of Numonics as part of his termination agreement in March 1988 (¶ 58); (2) by terminating all of his interest in Numonics without any renumeration in breach of contract on March 18, 1992 (¶ 59); (3) by not timely notifying him on March 18, 1992 of the intention to terminate the shares and by depriving him of his right to oppose the termination (¶ 60); (4) by not timely serving the memorandum from Rolland Henderson and the consent of common shareholders issued on that date (¶¶ 61, 72); (5) by falsely classifying the termination of the shares as a refinancing (¶ 62); (6) by breaching the terms of the Intercreditor Agreement on June 4, 1987; and (7) by fraudulently promising Deisenroth that he would be reimbursed for the value of his shares to induce him to forego his legal rights of redress (¶ 66).

These allegations for the basis for the plaintiff's claim of a Chapter 93A violation, as well as the three common law tort claims of fraud, breach of fiduciary duty and conversion. Defendants argue that all of these claims are barred by applicable statutes of limitations. "Generally, a federal court in a diversity case applies the statute of limitations that would be applied by the forum

state." *Stanley v. CF–VH Assoc., Inc.,* 956 F.Supp. 55, 57 (D.Mass.1997). The statute of limitations for 93A claims is four years. *See* G.L. c. 260, § 5A. Massachusetts tort actions are governed by a three-year statute of limitations. *See* G.L. c. 260, § 2A.[3] A claim arising from this type of breach of fiduciary duty in a close corporation (commonly known as a freeze-out) has "more of the characteristics of a tort claim than of a contract claim." *Kirley v. Kirley,* 25 Mass.App.Ct. 651, 652–53, 521 N.E.2d 1041 (1988) (imposing the tort statute of limitations on a corporate "freeze-out" claim because there was no promise to be enforced and the duty to the minority shareholder is "one imposed by law because of the nature of the relationship and not because of an agreement between the parties"); *see also Houle v. Low,* 407 Mass. 810, 813, 556 N.E.2d 51 (1990) (holding that a corporate "freeze out" is a tort claim but is "not a continuing tort which would save the day for the plaintiff in showing that he had seasonably commenced his action.")

Under Massachusetts law, the statute of limitations in tort actions begins to run at the time of the injury or when the injury becomes known to the plaintiff. *See* G.L. c. 260, § 2A; *Pagliuca v. City of Boston,* 35 Mass.App.Ct. 820, 824, 626 N.E.2d 625 (1994) (commencing the statutory period on the date of the act which caused the injury); *Kent v. Dupree,* 13 Mass.App.Ct. 44, 47, 429 N.E.2d 1041 (1982) (holding that in fraudulent misrepresentation actions, "a cause of action accrues at the time a plaintiff learns or reasonably should have learned of the misrepresentation"). Since Deisenroth knew of the recapitalization which resulted in his injury on April 13, 1992, (Compl.¶ 44), the statutory period began then. As such, the statutes of limitations for the 93A claim and the tort claims have expired because Deisenroth did not file his claim until May 23, 1997, more than five years after the accrual of the action.

Deisenroth argues that he should nonetheless be permitted to proceed for two reasons. First, he argues that he did not know that he

---

**3.** The parties seem to agree that Massachusetts law is appropriate for the tort claims. For the purposes of this motion it is not necessary to decide which law applies, because Deisenroth's

claims would be barred by Pennsylvania's shorter two year statute of limitations as well. *See* 42 Pa.Cons.Stat. § 5524.

was injured until the spring or summer of 1994, when negotiations with Numonics about his shares ceased. As such, Deisenroth argues that the wrong was "inherently unknowable" and that his claim survives because a statutory period should not begin until "the plaintiff knows or should know that []he has been injured." *Pagliuca*, 35 Mass.App.Ct. at 824, 626 N.E.2d 625 (1994); *see also Gore v. Daniel O'Connell's Sons, Inc.*, 17 Mass.App. Ct. 645, 649, 461 N.E.2d 256 (1984)(tolling the statute of limitations only until the injury was known, at which point the statute began to run, despite the fact that the extent of the injuries was not known). This argument is easily rejected since Deisenroth concedes he knew about the recapitalization that caused him injury in April 1992.

■ Second, Deisenroth argues that the statute of limitations should have been tolled during his settlement discussions with the defendants during the spring and summer of 1994. He reasons that because of these ongoing negotiations, Numonics should be estopped from asserting a statute of limitations defense because its representations persuaded him that there was no need to file suit. When a plaintiff fails to sue within the statutory period in reasonable reliance on representations of a defendant regarding settlement, a Court should not strictly enforce the statute of limitations where the statements "lulled the plaintiff into the false belief that it was not necessary for him to commence action within the statutory period of limitations." *Ford v. Rogovin*, 289 Mass. 549, 552, 194 N.E. 719 (1935).

■ However, a defendant waives the statute of limitations defense only where it gulls plaintiff by making such representations throughout the entire statutory period. *Compare Bergeron v. Mansour*, 152 F.2d 27, 30–31 (1st Cir.1945) (denying benefit of a statute of limitations defense to a defendant promising settlement up until the day the claim expired) *with Knight v. Lawrence*, 331 Mass. 293, 297, 118 N.E.2d 747 (1954) (dismissing action not brought within the statutory period where defendants, statements were made several months before the expiration of the statute of limitations) *and Reynolds Indus., Inc. v. Mobil Oil Corp.*, 618

F.Supp. 419, 424 (D.Mass.1985) (finding defendant was not estopped absent evidence that it lulled the plaintiff into a false sense of security).

■ In the instant case, the *Rogovin* line of estoppel cases does not assist Deisenroth because the discussions or negotiations between Deisenroth and Numonics ceased completely by the spring or summer of 1994, at least one year before the expiration of the three-year statute of limitations. Moreover, there could be no reasonable reliance on these discussions, particularly in light of defendants' intransigence which led to the earlier litigation. As such, the estoppel doctrine does not relieve Deisenroth of the statutory limitation.

■ The allegations that the assurances by Dumler and Seidman were themselves the basis for the 93A claim will not suffice as fraudulent misrepresentations. The most they agreed to do was "to bring this matter before the board of directors of Numonics." There is no allegation they did not do so or intentionally made false representations regarding settlement. In any event, "evidence of conduct or statements made in compromise negotiations" is inadmissible, except where negativing a contention of undue delay. Fed.R.Evid. 408. Exposing a party to Chapter 93A liability for statements made in failed settlement discussions would hardly further the public policy in favor of compromise and settlement of disputes. *See* Fed. R.Evid. 408 advisory committee's notes.

· Therefore, Counts I, II, III and VII of Deisenroth's complaint are dismissed as untimely.

### B. Contract Claims (Counts IV, v. and VI)

■ Deisenroth also alleges of breach of contract, unjust enrichment and breach of the covenant of good faith and fair dealing. "To state a claim for breach of contract under Massachusetts law, a plaintiff must allege, at a minimum, that there was a valid contract, that the defendant breached its duties under its contractual agreement, and that the breach caused the plaintiff damage." *Guckenberger v. Boston Univ.*, 974 F.Supp. 106, 150 (D.Mass.1997) (citations omitted).

■ The complaint is not a model of clarity as to which contractual provision Deisenroth claims was breached. It alleges that "the defendants breached the Intercreditor agreement shown in Exhibits D and E in regard to dilution of stock without fair and equitable remuneration when they extinguished [his] interest in Numonics without any consideration whatever." (Compl.¶ 87.) However, neither Exhibit D nor Exhibit E contains the Intercreditor Agreement. The document at Exhibit E is the memorandum from Rolland Henderson entitled "Numonics Corporation—Proposed Recapitalization;" it is not a contract. The document at Exhibit D is the 1988 Termination Agreement, which decreased Deisenroth's holdings to 192,294 shares of common stock, the number of shares he held at the time of recapitalization. In plaintiff's own words referencing the Termination Agreement, "[t]he breach of this contract is the heart and soul of this lawsuit." (Pl. Opp'n to Defs.' Mot. to Dismiss at 7). This Termination Agreement has a forum selection clause designating Pennsylvania as the forum state for any litigation arising from it. The Pennsylvania statute of limitations for contract claims is four years. 42 Pa.Cons.Stat. § 5525. Accordingly, any claim of breach of the Termination Agreement is time-barred.

Back-peddling, Plaintiff now contends in his reply brief that the six-year Massachusetts statute of limitations for contract claims applies to this action because the 1987 "Intercreditor Agreements" had a forum selection clause designating Massachusetts as the forum state. *See* G.L. c. 260, § 2. However, defendants contend that the Termination Agreement, which cancels the subordinated note, supersedes the Intercreditor Agreement (Exs. B, C & D), which governs the repayment of the note. The Termination Agreement states, "Deisenroth represents and warrants that he has no claims against the Company, *except as may expressly arise under the terms of this agreement.*" (emphasis added) (Compl.Ex. D.¶ 9.) Also, it provides, "the terms and provisions herein contained constitute the entire agreement between the Company and Deisenroth." (*Id.* at 14.) Therefore, the Court concludes that the Termination Agreement, with a forum selection clause designating Pennsylvania, trumps the Intercreditor Agreement, which designated Massachusetts as the forum state.

■ Even if the Common Stock and Subordinated Note Purchase Agreement were still operative after the parties entered into the Termination Agreement, the complaint is not precise as to which term was violated. In his reply brief plaintiff points to the right of first refusal. With respect to the issuance of "New Securities," the memorandum entitled "Numonics Corporation—Proposed Recapitalization" (Ex. E) suggests that the only "new" securities that Deisenroth would have arguably had the right to purchase would have been a portion of the 500,000 "New Common" stock options that were available to the Company's senior and middle management. (Ex. E at 3.) However, the complaint alleges that the breach was not a denial of the right of first refusal, but a dilution in the value of his stock. Plaintiff does not request as relief the right to purchase his proportionate share of the "New Common" stock, but rather the full value of his extinguished common stock. While the lack of notice did deprive the plaintiff of his right to oppose the refinancing, there is no allegation that a two percent shareholder could have turned the tide. Accordingly, even if this Agreement survived the Termination Agreement, the belated claim of a denial of the right of first refusal is not adequately pled.

### ORDER

Defendants' Motion to Dismiss (Docket # 6) is *ALLOWED.*