Macdonald, D. Lloyd, J.
Before the Court is a summary judgment motion predicated on the claim that the plaintiffs failed to bring their claim within the three-year statutory period for contract claims brought against the Commonwealth. G.L.c. 260, §3A. For the reasons below, the Court ALLOWS the motion and orders judgment to enter in favor of the defendants.
Pertinent Facts and Positions of the Parties
The complaint arises from an alleged failure by the defendant Massachusetts Executive Office of Transportation and Construction (“EOTC”) and the defendant Massachusetts Department of Public Works (collectively, the “State Defendants”) to comply with its contractual obligations to restore light rail service to the former Forest Hills terminus of the MBTA’s Arborway line. The underlying agreement was a memorandum of understanding (“MOU”) entered into between the Conservation Law Foundation (“CLF”) and EOTC in 1990. The agreement was entered at an early stage of the Central Artery Tunnel/Third Harbor Tunnel Project a/k/a “The Big Dig” (the “the Big Dig Project”).
The MOU’s ostensible purpose was to mitigate the anticipated air quality impacts of the Big Dig Project by providing for the construction and/or restoration of mass transit service in the metropolitan Boston area. The plaintiffs The Arborway Committee and its individually named members (“Plaintiffs”) include residents and merchants of the Jamaica Plain and Mission Hill Districts of the City of Boston. They allege that they are third-party beneficiaries of the MOU and that they have been harmed by the EOTC’s failure to complete the Arborway Rail Restoration Project in breach of the MOU.
For purposes of the present motion only, the State Defendants do not dispute the Plaintiffs’ standing, and they assume arguendo that they breached the MOU. However, they submit that the subject assumed breach occurred at the latest on December 31, 1997, the time by which Arborway LRV service was to have begun operation pursuant to the MOU. With the breach having happened then, the limitations period for the Plaintiffs’ action expired on December 31, 2000, the State Defendants submit.
The Plaintiffs concede that the Arborway LRV restoration was supposed to have been completed by December 31, 1997, but they assert that by its actions the EOTC extended the time for performance. The Plaintiffs assert that the EOTC did not finally renounce its commitments under the MOU until December 1, 2006. On that date the Commonwealth’s Department of Environmental Protection (“DEP”), faced -with the EOTC’s withdrawal of support for the project, amended its regulations to no longer include the Arborway Rail Restoration Project as part of DEP’s responsibility in the implementation of the MOU. By the Plaintiffs’ calculation, the limitations period extended for three years thereafter, and the filing of this present action on February 13, 2007 was thus well within it.
Discussion
As noted, the Plaintiffs bring their action as alleged third-party beneficiaries of the MOU. For purposes to the present motion, the Court accepts the Plaintiffs’ standing as such. Further, the Court accepts for purposes of the motion that the MOU was an enforceable agreement.[1]
By the terms of the MOU, the restoration of LRV service to Forest Hills was to be completed at the latest by December 31, 1997. All parties concede that it was not. Thus, an action against the State Defendants would need to have been filed by December 31, 2000 to avoid being barred by the statute of limitations. The plaintiffs’ filing date of February 13, 2007, therefore, is over six years out of time unless there is a basis for their being relieved of their obligation to file before then.
The plaintiffs assert that the time for performance was extended to December 31, 2000 by operation of the MOU and was further extended thereafter by the lulling actions of the State Defendants such as to equitably estop them from reliance on the statute of limitations. These arguments are considered in turn.
Extension of the MOU to 2000
It is unclear to the Court the basis on which the plaintiffs claim that the State Defendants overtly extended the time for performance. In an October 31, 1997 letter from the Deputy Director of Environmental Policy at the EOTC to the Commissioner of the DEP, the EOTC requested such an extension, but the DEP did not approve it. Instead, the DEP requested more information from the EOTC in support of its request. When the EOTC’s response thereafter was found wanting by the DEP, the DEP in May 1998 communicated to the EOTC that it had until December 31, 1998 to either commit to completing the project by December 31, 2000 or submit a formal request for a “project substitution,” i.e., a mass transit plan in lieu of the LRV restoration plan provided for in the MOU. In January 1999 the EOTC responded with a formal petition for project substitution. By its nature, such a position stated the EOTC’s intention at that time not to construct the LRV system on the Arborway.
Further, in September 2000 the DEP rejected the EOTC’s request for substitution and ordered it to substantiate further its conclusion that the LRV project was not feasible.
*406 In a development consistent with the conclusion that the State Defendants had failed to perform under the MOU at that juncture, on August 31, 2000 a number of the individual plaintiffs here filed with the EOTC a Notice of Intent to Sue (the “First Notice of Intent”). (The First Notice of Intent was filed to fulfill the sixty-day notice requirements of §304(b) of the federal Clean Air Act.) The First Notice of Intent “asserted that the EOTC and the MBTA have undertaken several steps to abandon the Arborway branch.” It was filed 32 months after the expiration of the MOU’s designated time for performance. As such, it was still within the limitations period.
However, no suit was brought at that time, and the three-year limitations period expired as of December 31, 2000. At that juncture, the LRV project was not operational, and the State Defendants had not committed to a tangible alternative to the LRV plan as provided for in the MOU.[2]
Equitable Estoppel
The Plaintiffs acknowledge the above chronology, but they argue that they should be relieved of the operation of the statute because the State Defendants “lulled” them into thinking that they would in fact perform and thus that the State Defendants are equitably estopped from raising the limitations defense. White v. Peabody Construction Co., Inc., 386 Mass. 121, 134 (1982).
“Under equitable estoppel, a plaintiff can ‘escape the consequences of his lack of diligence in bringing his action ... by way of proof that the defendants lulled the plaintiff into the delay.’ ” Kozikowski v. Toll Bros., Inc., 354 F.3d 16, 22 (1st Cir. 2003) (applying Massachusetts law and quoting Coady v. Marvin Lumber and Cedar Co., 167 F.Sup.2d 166, 171 (D.Mass. 2001). The First Circuit outlined the doctrine’s elements:
[T]he [plaintiffs] must satisfy a three-part test, showing: (1) that [the defendant] made representations that it knew or should have known would induce the [plaintiffs] to postpone bringing a suit; (2) that they did in fact delay bringing a suit in reliance on those representations; and (3) that reliance upon those representations was reasonable.
354 F.3d at 22. See also Celluci v. Sun Oil Co., 2 Mass.App.Ct. 722, 728 (1974).
Because “[e]stoppels are not to be regarded with favor,” Gallant v. Fed. Mut Ins. Co., 354 Mass. 146, 151 (1968), “the parly asserting the estoppel theory ‘has a heavy burden to prove that all [three] elements are present.’ ” Clickner v. Lowell, 422 Mass. 539, 544 (1996) (brackets in original) (quoting Harrington v. Fall River Housing Authority, 27 Mass.App.Ct. 301, 309 (1989)).
Particularly pertinent here is the requirement that the plaintiffs must prove that the defendants in fact “made representations they knew or should have known would induce the plaintiffs to put off bringing a suit.” New England Power Co. v. Riley Stoker Corp., 20 Mass.App.Ct. 25, 32 (1985) (quoting White, 386 Mass. at 134). Further, reliance by a plaintiff must be reasonable. Boylston Dev. Group, Inc. v. Boylston Street Corp., 412 Mass. 531, 542-43 (1992). Under this standard, “[p]romises . . . must be specific in order to constitute ‘representations,’ ” Kosikowski, 354 F.3d at 24, and it is “unreasonable as a matter of law to rely on vague assurances.” Id. (citing Buker v. Nat’l Mgmt. Corp., 16 Mass.App.Ct 36, 43-44 (1983)).
Even where a defendant’s conduct does rise to a level warranting an estoppel, the plaintiff may not proceed at leisure once it is no longer reasonable to rely upon the particular conduct that initially lulled the party into believing that suit need not be brought. Gallant, 354 Mass. at 151. Where the actions creating an estoppel had continued through the end of the limitations period and did not cease until after the period had run, the SJC held that “the plaintiffs . . . had only such reasonable time as was necessary to give them fair opportunity to commence litigation [thereafter].” Id. Explaining that ‘[e]stoppels are not to be . . . extended beyond the requirements of the situation which gave rise to them," the SJC ruled that the Gallant plaintiffs did not satisfy this “reasonable time” standard by having waited a further eleven months to file. Id. See also Pagiarini v. Iannaco, 440 Mass. 1032 (2003) (rescript opinion) (one month being the outer limit of “reasonable” under the facts presented).
Bearing in mind the “heavy burden” that the plaintiffs have in order to succeed on an equitable estoppel claim, the strongest evidence of the State Defendants continuing intention to be bound by the MOU is the circumstance that in November 2001 the EOTC publicly stated that it planned to go through with the project. And in December 2001 the MBTA issued a timeline for the LRV project, with an anticipated construction date of August 2006, almost ten years after the initial target date of the MOU.
The record further indicates that in 2002, 2003 and 2004 the DEP and the MBTA communicated their renewed intention to implement the LRV plan. However, the record also discloses that in the course of the EOTC doing so, there was no substantial implementation of the project in fact. The plaintiffs were aware of this because the Arborway Advisory Committee, with which the plaintiffs were closely associated, regularly met with the EOTC and MBTA on the status of the project.
Presumably as a result of the plaintiffs’ knowledge of the lack of concrete progress, eleven of the twelve individual plaintiffs later joined in a second Notice of Intent to Sue the EOTC (the “Second Notice of Intent”). The plaintiffs in that action in fact brought a claim under the federal Clean Air Act in the U.S. District Court for the District of Massachusetts against various state defendants, including the EOTC. The Second *407 Notice of Intent also indicated the plaintiffs’ intent to bring a civil action in the superior court of Massachusetts seeking injunctive and declaratory relief for alleged damage to the environment.
The Notice of Intent to Sue states that the named defendants “have failed and refused to fund the restoration of light rail vehicle/trolley service (“LRV Service”) on the portion of the MBTA’s ’’Green Line" known as the Arborway Line between Park Street Station in downtown Boston and Forest Hills Station in the Jamaica Plain District of the city of Boston." It further states that the EOTC and the MBTA have:
(1) Failed and refused to provide to the DEP by the specific deadline of December 31, 2001, a schedule approved by the DEP that specifies benchmarks, milestones, and action items for the design and construction of the Arborway project;
(2) Failed and refused to fund the construction phase of the Arborway project. . .
The Notice of Intent to Sue further states that “(t]hese actions and/or failures to act; the delay of five years since December 31, 1997, the date of the contemplated implementation of Green Line Arborway LRV restoration; the delay of four years since December 31, 1998, the date of the DEP extension; and the disregard of the November 7, 2001 DEP Order constitute violations by the named defendants of the federal Clean Air Act. . . [.]”[3]
Against the backdrop of these developments, the Court concludes that the plaintiffs have not met their burden to prove that the State Defendants “made representations they knew or should have known would induce the plaintiffs to put off bringing a suit.” New England Power Co. v. Riley Stoker Corp., supra at 32.
In spite of the above, if it were to be determined that the plaintiffs’ claim under the MOU did not lapse as of December 31, 2000 and, further, that the State Defendants were equitably estopped from raising the statute of limitations as a bar to the plaintiffs’ claims up to the January 10, 2005 filing of the Second Notice of Intent (subscribed, as noted, by eleven of the twelve individual plaintiffs), the plaintiffs without question were then on notice as to the State Defendants’ breach of the MOU.
Under such circumstances, while the plaintiffs would be excused from not having filed their claim up until the time of the Second Notice of Intent, from the date of the Second Notice of Intent, the plaintiffs no longer can be said to have been reasonably relying on any representations by the EOTC that the Arborway project would be completed.
As noted above, a plaintiff may not proceed at leisure once it is no longer reasonable to rely upon conduct that previously had lulled one into non-action. Rather, they have “only such reasonable time as [is] necessary to give them a fair opportunity to commence litigation.” Gallant, 354 Mass. 151. As noted earlier, the SJC in Gallant ruled that the passage of eleven months after notice was unreasonable. Id. See also Knight v. Lawrence, 331 Mass. 293, 297 (1954) (ten days), and Ford v. Rogouin, 289 Mass. 549, 553 (1935) (ten months).
The plaintiffs here waited over a year to bring the action after the filing of the Second Notice of Intent to Sue. Such delay was unreasonable as a matter of law on the fact presented in the summary judgment record. Thus, the plaintiffs’ claim was untimely.
Promissory Estoppel
The Plaintiffs’ complaint also includes a count for promissory estoppel. Promissory estoppel claims are treated as “equivalent to a contract action, and the party bringing such an action must prove all the necessary elements of a contract other than consideration.” Rhode Island Hosp. Trust Nat’l Bank v. Varadian, 419 Mass. 841, 650 (1995). As such, the statute of limitations applicable to contract actions likewise applies to promissory estoppel claims. Carney v. Shawmut Bank, N.A., Memorandum and Order Pursuant to Rule 1:28,72 Mass.App.Ct. 1117, n.5 (2008).
The summary judgment record includes evidence that on June 23, 2003, the Executive Office of Environmental Affairs issued a Massachusetts Environmental Protection Act certificate on the Arborway project, stating that it “represents a significant investment in urban mass transit and fulfills a longstanding commitment made by the Commonwealth to include urban and suburban transit projects as an integral element of the Central Artery /Tunnel Project.” While the summary judgment record also indicates that ARRPAC “continued to meet with and advise” the EOTC and the MBTA through February 18, 2004, it fails to include or even allege any promise made by the MBTA or EOTC at these meetings on which a promissory estoppel claim may be based. Accordingly, the three-year statute of limitations applicable to the promissory estoppel claim expired, at the latest, on June 23, 2006. The plaintiffs did not commence this action until February 13,2007. Accordingly, summary judgment is appropriate for the defendants on this count.
Declaratory Relief Pursuant to G.L.c. 231 A, §1
The plaintiffs’ claim for declaratory relief pursuant to G.L.c. 231 A, §1 likewise cannot survive summary judgment. Declaratory procedure may not be used “to circumvent statutes of limitation.” Second Church in Dorchester v. Boston, 343 Mass. 477, 479 n.1 (1962). Plaintiffs seek a declaration that they are intended third-party beneficiaries with the right to enforce the MOU. Nevertheless, because this court has determined that any contract action based on the MOU is barred by the statute of limitations, summary judgment must likewise be granted in favor of the defendants on this count.
*408 ORDER
The State Defendants’ motion for summaiy judgment is ALLOWED. The complaint is DISMISSED, and judgment shall enter for the State Defendants.

The MOU was extremely broad in scope. It purported to settle objections by CLF to environmental impacts of the Big Dig Project by committing the EOTC to various mitigation measures. The latter included parking freezes, high-speed rail Improvements, e.g., “three hour travel speeds for high speed rail between New York and Boston,” suburban “remote terminals” for access to Logan Airport, water shuttle service to the North Shore, HOV strategies on the Southeast Expressway, the Mass Pike and 1-93, a rail connection between South Station and Logan Airport and 16 mass transit improvements, one of which was the Arborway project that is the subject of the present action.

In September 2000 the DEP had issued an “Administrative Consent Order” with regard to the project. Its principal provision was a finding that the EOTC had not demonstrated that the LRV plan was infeasible and gave the EOTC sixty more days to do so. If it did, the EOTC was then obligated by the Consent Order to submit a substitute project for the LRV. By the end of the year 2000 the EOTC had not complied with the Administrative Consent Order. It did not do so until June 2001. At that point the EOTC filed with the DEP a submission purportedly demonstrating that the LRV project was not feasible. As a substitute for the LRV transportation mode, the EOTC proposed expanded bus service. In November 2001 the DEP rejected both the EOTC’s submission that the LRV mode was infeasible and the EOTC’s bus substitute.

In fact, in March 2005 the Conservation Law Foundation (not the plaintiffs) brought suit in the federal court against the EOTC regarding several transit projects, including the Arborway LRV project. See Conservation Law Foundation, Inc. v. Romney, 421 F.Sup.2d 344 (D.Mass. 2006) (denial of motion to dismiss). The federal action was not based on the MOU, but rather the Clean Air Act and the Commonwealth’s implementation plan pursuant to it. In November 2006 the Conservation Law Foundation settled with the EOTC. While the Arborway LRV project was included in the complaint filed in the federal action, it was not one of the approved transit projects included in the settlement.