Stanley J. KOZIKOWSKI and Eunice
K. Kozikowski, Plaintiffs,

v.

TOLL BROS., INC. a/k/a/ TOLL
BROTHERS, INC.,
Defendant.

No. CIV.A.01–2296–WGY.

United States District Court,
D. Massachusetts.

Feb. 25, 2003.

Robert K. Harrington, Fall River, MA, for Stanley Kozikowski, Eunice K. Kozikowski, Plaintiffs.

Paul V. Kelly, Lisa M. Asiaf, Kelly, Libby & Hoopes, PC, Boston, MA, for Toll Bros., Inc. aka Toll Brothers, Inc., Defendant.

## MEMORANDUM AND ORDER

YOUNG, Chief Judge.

## I. INTRODUCTION

The plaintiffs, Stanley Kozikowski and Eunice Kozikowski (the "Kozikowskis"), filed the instant action against the defendant, Toll Brothers, from whom they purchased a home in December 1989. Their complaint includes four claims: (1) a Chapter 93A claim for alleged breach of express warranty; (2) a Chapter 93A claim of deceit; (3) a common law claim for breach of express warranty; and (4) a common law claim for deceit. Toll Brothers has moved to dismiss this action on the grounds that all of the Kozikowskis' claims are barred by the applicable statutes of limitations. In their Opposition to Toll Brothers' motion, the Kozikowskis argued—with reference to new affidavits and documents attached to their Opposition—that the doctrine of equitable estoppel prevents Toll Brothers from invoking the relevant statutes of limitations in this case. Plaintiffs' Objection to Defendant's Motion to Dismiss ("Opp'n") [Docket No. 13] at 6–10.

On September 12, 2002, the Court held a hearing on Toll Brothers' motion to dismiss. Because the parties had left the equitable estoppel issue largely unaddressed in their pleadings, and because the Kozikowskis had attached documents relevant to this issue in their Opposition, the Court converted the Toll Brothers' motion to dismiss into a motion for summary judgment. See Fed.R.Civ.P. 12(b) ("If ... matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."). Hearing Tr. at 2. Both parties agreed that such a conversion was appropriate, id., but the Kozikowskis requested the opportunity to conduct additional discovery to develop their equitable estoppel argument. Id. at 4–8. Accordingly, the Court provided the Kozikowskis with the opportunity to conduct three depositions within the next 60 days concerning the equitable estoppel issue. Id. at 8. The Court further instructed the Kozikowskis that, on the basis of these depositions, they could "supplement solely on the issue of equitable estoppel." Id.

After receiving several extensions, the Kozikowskis have now provided the Court with a Supplemental Brief in Opposition to Defendant's Motion to Dismiss ("Supplemental Opp'n"), as well as various exhibits and the deposition of Matthias J. Mulvey, who was the building inspector in the Town of Franklin during 1998.

## II. FACTS [1]

On June 21, 1989, the Kozikowskis entered into a Purchase and Sale Agreement

---

**1.** As is required in a motion for summary judgment, the following facts are presented in

with Franklin Chase, LLP, a limited partnership and subsidiary of Toll Brothers, for the purchase of a single family luxury home to be constructed in Franklin, Massachusetts for $285,900.00. Am. Compl. [Docket No. 2] ¶ 5. The Purchase and Sale Agreement provided the Kozikowskis with an insured limited 10–year warranty; shortly thereafter, the Kozikowskis also purchased from Toll Brothers a home owners warranty for major structural defect coverage. Am. Compl. ¶¶ 6, 8.

Toll Brothers applied for a building permit from the Town of Franklin (the "Town"), and constructed the home. Am. Compl. ¶ 7. On December 19, 1989, the closing took place, with a final purchase price of $335,685.00.[2] Am. Compl. ¶ 5. On that same date, the Kozikowskis and Toll Brothers signed a separate agreement in response to the Kozikowskis' complaints about certain construction deficiencies and deviations from the agreed-upon model. Agreement of December 19, 1989 (attached to Am. Compl. as Ex. A). In this agreement, Toll Brothers agreed to construct and install, at no further cost, certain extra items in the home, including window grills, a cooktop, a complete central vacuum system, two electronic air filters, and inside trim around the two garage windows. Id. at ¶ 1. The Kozikowskis, meanwhile, agreed that "any and all construction deficiencies, including but not limited to those deficiencies which have been brought to the Seller's attention, are forgiven and that any corrective action to be taken will be the Buyer's responsibility," id. at ¶ 3, and released "the Seller from any and all obligations to cause further corrective action to be taken therein," id. at ¶ 4. The December 19th Release explicitly stated,

however, that Toll Brothers' obligations under the Warranty agreement would remain. Id. at ¶ 5.

Over the next several years, the Kozikowskis' complaints about the home continued. One specific problem area involved the home's fireplaces and chimneys; the home's three fireplaces were all failing to draw properly. Letter from Harrington to Araten, July 25, 2001 (attached to Compl. as Ex. C), ¶ 4. As a result, on September 17th, 1992, the Kozikowskis and Toll Brothers signed another agreement. Letter from Araten to Harrington, May 18, 2001 (attached to Compl. as Ex. B), ¶ 4. Under this agreement's provisions, Toll Brothers paid the Kozikowskis $4,479.74 (with the intention that the Kozikowskis would use the money to repair the chimney and fireplace problems), and the Kozikowskis released Toll Brothers from all claims relating to the home's fireplaces and chimneys. Id.; see also Agreement of September 17th, 1992 (attached to Compl. as Ex. B).

The Kozikowskis' dissatisfaction with their new home continued. In November 1992, they wrote a letter to Wolfgang Bauer ("Administrator Bauer"), the Town Administrator of Franklin, stating that since purchasing their home, they had "tolerate[d] numerous building deficiencies, errors, and outright mistreatments—while patiently, like fools, [they had] tried to work with the builder toward solutions." Letter from Kozikowski to Bauer, November 19, 1992 (attached to Opp'n at Tab B). Their letter outlined numerous problems with their home, including leaks, id. at ¶ 2, a malfunctioning furnace, id. at ¶ 3, smells of gas, id. at ¶ 6, problems with their hot

---

the light most favorable to the Kozikowskis, the non-moving party, and all justifiable inferences have been drawn in favor of the Kozikowskis for the purposes of this motion. *See*

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**2.** The price increase resulted from certain additions to the home.

water heater, *id.*, and the like. They went on to state that they wanted to file a complaint with the town against Toll Brothers, and to suggest that charges of criminal misconduct should be filed against Toll Brothers. *Id.* at ¶ 18.

In response to the Kozikowskis' complaints, Allan Fraser ("Commissioner Fraser"), then-Building Commissioner of the Town of Franklin, inspected the property. Letter from Fraser to Toll Bros., February 11, 1993 (Attached to Opp'n at Tab A). In his inspection, Commissioner Fraser identified thirteen building code violations, including problems with the home's exhaust and inhalation systems. *Id.* In a written letter, Commissioner Fraser ordered Toll Brothers to submit a written proposal for specific corrective action as well as a specific time schedule for accomplishing the work. *Id.* Norton Remmer ("Remmer"), a consulting engineer affiliated with Toll Brothers, requested and received an extension of time to respond to Fraser's findings. Letter from Remmer to Commissioner Fraser, March 1, 1993; letter from Commissioner Fraser to Remmer, March 2, 1993 (attached to Opp'n at Tab C, Exs. B and C). Remmer then wrote a letter to Commissioner Fraser outlining his plans for responding to the code violations. Letter from Remmer to Commissioner Fraser, March 16, 1993 (attached to Opp'n at Tab C, Ex. D). Fraser responded with a letter sent both to Toll Brothers and the Kozikowskis that outlined his approval of Remmer's plans with regard to eight of the violations and granted Remmer additional time to consider the fireplace issue. Letter from Commissioner Fraser to Remmer, March 24, 1993 (attached to Opp'n at Tab C, Ex. E). Fraser followed that letter with a letter to the Kozikowskis, in which he expressed his further approval of the planned solutions. Letter from Commissioner Fraser to the Kozikowskis, July 27, 1993 (attached to

Opp'n at Tab C, Ex. F). Commissioner Fraser noted, however, that it was beyond his authority to determine whether Toll Brothers actually complied with the plans and told the Kozikowskis that it was "really between you folks and Toll Bros to work out mutually acceptable times and access for completion of these items." *Id.*

Toll Brothers never addressed many of the issues described above, ostensibly due to various scheduling difficulties on its part. Aff. of Eunice K. Kozikowski (Attached to Opp'n at Tab C, Ex. A). Although Toll Brothers did resolve some of Plaintiff's complaints that did not relate to building code violations, such as problems with the kitchen cabinets, the roof flashing, and the cellar staircase, *id.* at ¶ 5, it failed to address the specific code violations that Fraser had identified. Letter from Harrington to Araten, July 25, 2001 (attached to Compl. as Ex. C), ¶ 6 ("None of the then known code violations cited was addressed by Toll Brothers whatsoever."). According to Toll Brothers, in 1994, the Kozikowskis complained further and threatened that "unless Toll Brothers took 'appropriate positive actions,' [they] would 'have no recourse but to file a formal complaint against [Toll Brothers] with the Office of the Attorney General' and contact 'WHDH TV5, the BBB, and other jurisdictions." Letter from Araten to Harrington, May 18, 2001 (attached to Compl. as Ex. B), ¶ 8. The Kozikowskis do not dispute this allegation, and explain that they took this action because they were "[c]ompletely frustrated and upset because neither Commissioner Fraser nor Toll Brothers was responding to their fully justified complaints ...." Letter from Harrington to Araten, July 25, 2001, ¶ 8. The Kozikowskis also claim, however, that they continued to receive assurances that Toll Brothers would satisfy their concerns. Aff. of Eunice Kozikowski, ¶ 6.

In June 1994, Toll Brothers donated approximately 2,000 feet of paving on Maple Street (at a value of $15,000) to the Town of Franklin. Supplemental Opp'n [Docket No. 21] at 3. In a letter to Town Administrator Bauer, Toll Brothers' representative innocuously classified this donation as seeking "to help the Town of Franklin with its increasing responsibilities due to residential development." Letter from Roche to Administrator Bauer, June 10, 1994 (attached to Supplemental Opp'n as Ex. 10). When characterizing the donation to the Town Council, however, Town Administrator Bauer stated that "Toll Brothers, Inc. experienced some problems with the Building Inspection Department and suggested the donation to resolve the issue." Memorandum from Administrator Bauer to Town Council, June 10, 1994 (attached to Supplemental Opp'n as Ex. 9).

Meanwhile, Toll Brothers' situation with the Kozikowskis remained essentially unresolved. On August 10, 1997, the Kozikowskis offered to release Toll Brothers from all claims against them in exchange for an "all-season room" off the back of the house. Letter from Araten to Harrington, ¶ 9; Letter from Harrington to Araten, ¶ 9. On August 21, 1997, apparently in response to a written complaint that the Kozikowskis had filed, Robert Toll, Chairman and CEO of Toll Brothers, wrote to the Kozikowskis that he had passed their letter onto senior management, and had been "assured that [they would] be treated fairly." Letter from Toll to the Kozikowskis, August 21, 1997 (attached to Opp'n at Tab C, Ex. H). One month later, however, William Gilligan, Vice President of Toll Brothers, sent a far less conciliatory letter to the Kozikowskis. He stated that he was "confused as to why Toll Brothers has

continued to come back and take care of issues in [the Kozikowskis'] home despite the Release Agreement [they] executed on December 19, 1989." Letter from Gilligan to the Kozikowskis, September 26, 1997 (attached to Opp'n at C, Ex. G). He wrote that Toll Brothers would not build an all-season room for the Kozikowskis' home, nor would they be "undertaking any additional corrective measures." *Id.*

In January 1998, after members of the Kozikowskis' family experienced various illnesses, the Kozikowskis contacted the Bay State Gas Company, asking them to inspect the gas log set fireplaces that Toll Brothers had installed in response to the 1993 code violations. Opp'n at 5. The Bay State Gas Company found high carbon dioxide levels and thus advised the Kozikowskis not to use the fireplaces or the remaining wood burning unit.[3] *Id.* The Kozikowskis then apparently contacted Gilligan. Despite his previous letter, in which he had stated that Toll Brothers would undertake no more repairs, Gilligan wrote that the Kozikowskis should schedule an appointment with one of Toll Brothers' representatives to inspect the problem and that "[i]f the source of the problem is Toll's responsibility, we will correct it." Letter from Gilligan to the Kozikowskis, February 3, 1998 (attached to Opp'n at Tab C, Ex. I).

The Kozikowskis subsequently contacted new Building Commissioner, Matthias Mulvey ("Mulvey"), and asked him to inspect their home for building code violations. Opp'n at 5. Mulvey conducted his own inspection and identified 18 such violations. *Id.* at 6. Some of these violations had also been on the list of 1993 violations (such as the fireplace defects, which violated Section 2108 of the building code, and

---

**3.** It is unclear from the record whether the 1993 repair was itself the cause of this problem.

the foundation defects, which violated Section 2102); others had not (such as the roof defects, which violated Section 2107). Am. Compl., ¶ 12; Opp'n at Tab A. Mulvey then sent a letter to Toll Brothers, dated July 3, 1998, advising them of the violations. Am. Compl., ¶ 10. Toll Brothers did not correct the violations, and the Norfolk County District Attorney's Office subsequently brought a criminal complaint against Toll Brothers. *Id.*, ¶ 11. The complaint was ultimately dismissed. Def.'s Mem Supp. Mot. to Dismiss [Docket No. 5] at 5. Mulvey conducted a subsequent inspection on February 24th, 1999, at which point he found further evidence of building code violations. Am. Compl., ¶ 13. The Kozikowskis claim that three reputable area builders have now advised them that the home should be demolished and rebuilt. *Id.* at ¶ 14.

On April 23, 2001, the Kozikowskis sent a letter to Toll Brothers containing a demand for relief pursuant to the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A. Letter from Harrington to Toll Brothers, Inc., April 23, 2001 (attached to Compl. as Ex. A). The parties subsequently engaged in a series of correspondence in which they disputed each others' versions of events and made counter-offers for settlement. On November 7, 2001, after no settlement was reached, the Kozikowskis filed the instant lawsuit, in which they seek $800,000 in damages.

## III. DISCUSSION

### A. Standard of Review

As noted above, the Court has converted Toll Brothers' motion to dismiss into one for summary judgment. As such, the Court must review "the entire record 'in the light most flattering to the nonmovant and indulge[ ] all reasonable inferences in that party's favor. Only if the record, viewed in that manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *Cadle Company v. Hayes*, 116 F.3d 957, 959 (1st Cir.1997) (internal citations omitted).

### B. Statutes of Limitations Governing the Kozikowskis' Claims

■■■ Toll Brothers argues that the statutes of limitations have expired on all four of the Kozikowskis' claims. State statutes of limitations govern claims that are in federal court on the basis of diversity jurisdiction. *See, e.g., Pitts v. Aerolite SPE Corp.*, 673 F.Supp. 1123, 1127 (D.Mass.1987). Accordingly, this Court must look to Massachusetts law to identify the appropriate statutes of limitations for each of the Kozikowskis' claims. An examination of Massachusetts law makes clear that the statute of limitations has indeed expired on each of the these claims.

The Kozikowskis' first claim is that Toll Brothers violated Mass. Gen. Law ch. 93A (the Massachusetts Consumer Protection Act) by breaching its express warranty that the home would comply with the state building code. Under Massachusetts law, the applicable statute of limitations for Chapter 93A claims is four years from the accrual date. Mass. Gen. Laws ch. 260, § 5A. Under chapter 93A, "unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Mass. Gen. Laws ch. 93A, § 2(a). Toll Brothers' breach of warranty, the Kozikowskis argue, constituted an unfair or deceptive act and is thus covered by Chapter 93A.

■■■ The accrual date of a 93A claim is "established by the same principles that govern the determination of the underlying actions." *Coady v. Marvin Lumber and Cedar Company*, 167 F.Supp.2d 166, 169 (D.Mass.2001) (Gorton, J.). Here, the un-

derlying action is breach of express warranty. The statute of limitations on a breach of express warranty claim accrues when the plaintiff knows or reasonably should have known of the breach. *See, e.g., Anthony's Pier Four, Inc. v. Crandall Dry Dock Eng'rs,* 396 Mass. 818, 826, 489 N.E.2d 172 (1986). Toll Brothers argues that, at the latest, the Kozikowskis' claim started accruing in 1993, when they received a copy of Fraser's February 1993 letter outlining their home's thirteen building code violations. The Kozikowskis have not contested that their claim began to accrue as of 1993, such that it was time-barred as of 1997, absent equitable estoppel.

■ The Kozikowskis' second claim is that Toll Brothers deceived them by concealing or failing to inform them about the building code violations on the property to induce them to enter the transaction, thus committing an unfair or deceptive act in violation of chapter 93A. Am. Compl. ¶ 25. As noted above, the statute of limitations for 93A actions is four years from the date of accrual, which is established by the same principles that govern the determination of the underlying action. A cause of action for deceit in the sale of real estate accrues when the buyer learns or reasonably should have learned of the misrepresentation. *See Friedman v. Jablonski,* 371 Mass. 482, 485–486, 358 N.E.2d 994 (1976). Here, too, Toll Brothers argues that the Kozikowskis' claim began accruing no later than 1993, such that it has been time-barred since 1997.

Third, the Kozikowskis bring a breach of express warranty claim under Massachusetts common law, based on the same facts underlying their 93A breach of warranty action. Am. Compl. ¶ 34. The statute of limitations for a breach of express warranty action, which sounds in contract, is six years from the date of accrual. Mass.

Gen. Laws ch. 260, § 2. As noted above, a breach of express warranty action starts accruing when the plaintiff knew or reasonably should have known of the breach; Toll Brothers thus argues that this claim also started accruing no later than 1993 and has been time-barred since 1999. Def.'s Mem. Supp. Mot. to Dismiss at 10.

Fourth, the Kozikowskis have brought a common law deceit claim. Am. Compl. ¶ 38. The statute of limitations for a deceit claim, which sounds in tort, is three years from the date of accrual. Mass. Gen. Laws ch. 260, § 2A. As noted above, a cause of action for deceit in the sale of real estate accrues when the buyer learns or reasonably should have learned of the misrepresentation; Toll Brothers thus argues that this claim began accruing no later than 1993 and was time-barred as of 1996.

## C. Equitable Estoppel

■ The Kozikowskis have not disputed that the statutes of limitations began to run on their claims in 1993. Rather, they have responded to Toll Brothers' invocation of the statutes of limitations on their four claims by invoking the doctrine of equitable estoppel. Under this doctrine, a plaintiff can "escape the consequences of his lack of diligence in bringing his action . . . by way of proof that the defendants lulled the plaintiff into the delay." *Coady,* 167 F.Supp.2d at 171.

■ A three-pronged test must be satisfied for equitable estoppel to apply. First, the plaintiff must show that the defendant made representations that it knew or should have known would induce the plaintiff to postpone bringing a suit; second, the plaintiff must show that it did in fact delay bringing a suit in reliance on those representations; and third, the plaintiff must show that its reliance on those representations was reasonable. *See*

O'Blenes v. Zoning Bd. of Appeals of Lynn, 397 Mass. 555, 558, 492 N.E.2d 354 (1986); White v. Peabody Constr., 386 Mass. 121, 134, 434 N.E.2d 1015 (1982). The underlying presumption is that the "doctrine of estoppel is not applied except when to refuse it would be inequitable." New England Power Co. v. Riley Stoker, 20 Mass.App.Ct. 25, 32, 477 N.E.2d 1054 (1985).

The Kozikowskis argue that the three elements of equitable estoppel are met here and, thus, that all four of their claims ought survive. They claim that after Commissioner Fraser informed them of the building code violations, "[r]epresentations were made by Toll Brothers, through their numerous officers and agents, and those representations were made in a fashion that would induce the Kozikowskis to refrain from filing suit." Opp'n at 5. Specifically, they highlight the following representations: 1) the copy of the March 24, 1993 letter from Commissioner Fraser to Remmer that they received; 2) the July 27, 1993 letter from Commissioner Fraser to the Kozikowskis; 3) the fact that Toll Brothers continued to schedule repair work on their house through 1996 and 1997; and 4) the August 21, 1997 letter that they received from Toll Brothers' CEO, stating that the Kozikowskis would be treated fairly and that Toll Brothers hoped to restore their confidence. Id. at 4–5. In addition, they argue that—on the basis of Toll Brothers' 1994 donation to the Town—a "reasonable person could draw a[sic] inference that the Defendant, in fact, bribed town officials in order to make building code violations go away." Supplemental Opp'n at 3. The Kozikowskis further suggest that Toll Brothers' representations did in fact prompt them to delay suit. See Aff. of Eunice Kozikowski, ¶ 6 ("At all relevant times prior to July 3, 1998, we received numerous assurances that [Toll Brothers] was working to satisfy our concerns.").

As noted above, the first prong of an equitable estoppel argument is a showing that the defendants made representations that they knew or should have known would induce the delay of suit. Even construing the facts in the light most favorable to the Kozikowskis, it is far from clear that the representations that they have identified on the part of Toll Brothers satisfy this first prong. Although the March 24, 1993 and July 27, 1993 letters authored by Commissioner Fraser did indicate that Toll Brothers was making plans to rectify the home's problems, the letters also made clear that Toll Brothers had not yet actually done so. Nor did Commissioner Fraser's letters contain any assurance on the part of Toll Brothers that it would in fact do so. On the contrary, in the July 27 letter, Fraser essentially told the Kozikowskis that it was up to the Kozikowkis themselves to make sure that Toll Brothers actually completed the repairs.

Nor were the representations made directly by Toll Brothers specific or explicit. The Kozikowskis point to the fact that Toll Brothers continued to make repair appointments, but such action does not qualify as a "representation" in the context of equitable estoppel. See New England Power Co., 20 Mass.App.Ct. at 34, 477 N.E.2d 1054 ("We do not view the fact of honest, genuine repair efforts, standing alone, as sufficient basis for application of the doctrine of estoppel."). Moreover, the fact that scheduling difficulties often prevented Toll Brothers from actually conducting these repairs also lessens the force of this "representation." Finally, the August 21, 1997 letter from Toll Brothers' CEO not only came years after Toll Brothers had failed to satisfy the Kozikowskis' concerns, but also used extremely general

language, stating only that the Kozikowskis would be treated fairly and that Toll Brothers hoped to satisfy their concerns.

The second prong presents further problems for the Kozikowskis. Even assuming that Toll Brothers' promises to repair the home were sufficiently clear to meet the first prong of the equitable estoppel test, the Kozikowskis' assertion that they truly *believed* Toll Brothers' assurances—and were thus lulled into inaction—strains credulity, given the long and rocky course of the relationship between the Kozikowskis and Toll Brothers. As described above, in 1992, the Kozikowskis were so frustrated with Toll Brothers that they encouraged the Town of Franklin to ban Toll Brothers from building in the Town and bring charges of criminal misconduct against them. In their 1992 letter to Administrator Bauer, the Kozikowskis explicitly stated that Toll Brothers was not dealing with them in good faith.

The Kozikowskis seem to be arguing that after Commissioner Fraser's 1993 identification of their home's building code violations, Toll Brothers changed its tune and began trying to appease them, while simultaneously bribing the Town of Franklin to cover up its violations. But it is nonetheless clear, from the Kozikowskis' own account of the facts, that Toll Brothers behaved inconsistently and unreliably in resolving the problems with their home, and, more importantly, that the *Kozikowskis* regarded Toll Brothers as unreliable. The Kozikowskis do not dispute Toll Brothers' allegation that in 1994, the Kozikowskis threatened to file a formal complaint against Toll Brothers, as well as to contact the media, specifically in response to Toll Brothers' failure to resolve their problems. On the contrary, in one piece of correspondence, the Kozikowskis' attorney asserted that the Kozikowskis made this threat precisely *because* they were "[c]ompletely frustrated and upset because neither Commissioner Fraser nor Toll Brothers was responding to their fully justified complaints . . . ." Letter from Harrington to Araten, July 25, 2001, ¶ 8.

As such, any argument that Toll Brothers' assurances to the Kozikowskis and their alleged bribes to the Town were truly lulling the Kozikowskis into inaction utterly lacks credibility. Although the Kozikowskis' allegation and evidence that Toll Brothers paid the Town to "make building code violations go away" is indeed grave and troubling, the record makes clear that the Kozikowskis, throughout this time, were acutely aware of the existence of defects in their own home. Accordingly, their allegation that Toll Brothers bribed the Town, even if true, simply fails to advance their equitable estoppel argument in any material way. *Cf. Sousa v. BP Oil, Inc.,* No. CIV.A.80–4046–DPW, 1995 WL 842003, at * 5 (D.Mass. Sept. 12, 1995) (Woodlock, J.) (dismissing plaintiff's equitable estoppel argument because "[t]he circumstances surrounding the so-called 'bribe' might be suggestive of foul pay, but foul play is not in itself sufficient to warrant raising an estoppel.... [B]eing the victim of a bribe [between two other parties] is not tantamount to being induced or 'lulled' into voluntarily forgoing one's legal remedies."), *aff'd in part and dismissed in part by Sousa v. BP Oil, Inc.,* 98 F.3d 1357 (Fed.Cir.1996) (unpublished opinion).

The third prong is even more problematic for the Kozikowskis. Even assuming *arguendo* that Toll Brothers did make representations that were sufficiently specific to induce the Kozikowskis to delay bringing suit, and that the Kozikowskis did in fact delay suit because they believed those representations, such delay must have been *reasonable* for equitable estoppel to apply. *See O'Blenes,* 397 Mass. at 558, 492 N.E.2d 354 ("The reliance of the

party seeking the benefit of estoppel must have been reasonable."). Here, even construing the facts in the light most favorable to the Kozikowskis, their failure to file suit prior to this point—given Toll Brothers' consistent vacillation between tepid responsiveness and extreme non-responsiveness, and the Kozikowkis' own repeated threats in response to this treatment—cannot be viewed as reasonable. As the *Coady* court explained:

> The fact that [the defendant] "did not make an honest or good faith effort at any time to remedy the defects," as [the plaintiff] alleges, does not establish that [the defendant] induced the delay. Instead, because [the defendant] was unwilling to take responsibility for the defects, [the plaintiff] was (or should have been) put on notice that a claim (or a lawsuit) was the only sure way to resolve the dispute.

*Coady,* 167 F.Supp.2d. at 171.

In short, the Kozikowskis have failed to show that equitable estoppel is applicable here. The evidence, even when viewed in the light most favorable to their case, belies any argument that the Kozikowskis were lulled into inaction because of representations made by Toll Brothers to them. On the contrary, the evidence unequivocally shows that the Kozikowskis were well aware of their home's defects as early as 1993, if not before, and that they were consistently unsatisfied with Toll Brothers' response to those defects throughout their dealings with Toll Brothers. Because the Kozikowskis waited until November 2001 to file suit, at which point the statutes of limitations governing their claims had long expired, this Court must grant Toll Brothers' motion for summary judgment.

## IV.  CONCLUSION

Accordingly, Toll Brothers' motion to dismiss [Docket No. 4], converted by this Court into a motion for summary judgment, is GRANTED.

SO ORDERED.