# United States Court of Appeals
## For the First Circuit

No. 03-1460

STANLEY J. KOZIKOWSKI and EUNICE K. KOZIKOWSKI,

Plaintiffs, Appellants,

v.

TOLL BROS., INC., a/k/a TOLL BROTHERS, INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

(Hon. William G. Young, Chief U.S. District Judge)

Before

Lynch, Circuit Judge,
Lipez, Circuit Judge,
and Stahl, Senior Circuit Judge.

Robert K. Harrington was on brief for appellants.
Lisa M. Asiaf, with whom Paul V. Kelly and Kelly, Libby & Hoopes, P.C., were on brief for appellee.

December 31, 2003

**STAHL**, **Senior Circuit Judge**.  Plaintiffs-appellants Stanley and Eunice Kozikowski appeal from the district court's order granting defendant-appellee Toll Brothers, Inc.'s ("Toll Bros.")  motion to dismiss, converted by the court into a motion for summary judgment.  The Kozikowskis challenge (1) the district court's finding that the statute of limitations began to run on their claims in 1993; (2) the court's finding that the Kozikowskis failed to establish equitable estoppel; and (3) the court's decision not to permit mandatory discovery to the Kozikowskis prior to considering Toll Bros.'s  motion to dismiss, which the court had converted to a motion for summary judgment.  We affirm the district court, but on different grounds as to the Kozikowskis' deceit claims.

## I. BACKGROUND

On June 21, 1989, the Kozikowskis entered into a Purchase and Sale Agreement with Franklin Chase Limited Partnership.[1]  The contract called for the purchase of a luxury home to be constructed in Franklin, Massachusetts for $285,900.00.  The sale agreement provided the buyer with a so-called "insured" limited ten-year warranty against structural defects.  On July 18, 1989,  Toll Bros.

---

[1]Franklin Chase was a Massachusetts limited partnership and subsidiary of Toll Bros. that was cancelled on November 28, 1997, after its initial general partner, Dover General, Inc., merged out of existence into Franklin Farms G.P., Inc.  Toll Holdings, Inc. is sole stockholder of Franklin Farms G.P., Inc. and Toll Bros. is sole stockholder of Toll Holdings, Inc.

applied for a building permit from the Town of Franklin. Following issuance of the permit, Toll Bros. commenced construction of the home. On December 14, 1989, after five months of construction, the Town issued a Certificate of Occupancy confirming that the home was fit for occupancy. Five days later, the closing took place and Franklin Chase transferred title to the Kozikowskis. The Kozikowskis and Franklin Chase also signed a separate agreement in response to the Kozikowskis' complaints about certain construction deficiencies and deviations from the agreed-upon model of the home. In this separate agreement, Franklin Chase, as the "Seller," agreed to construct and install, at no further cost, various extra items in the home. In exchange, the Kozikowskis agreed that "any and all construction deficiencies, including but not limited to those deficiencies which have been brought to the Seller's attention, are forgiven and that any corrective action to be taken will be the Buyer's responsibility," and released "the Seller from any and all obligations to cause further corrective action to be taken therein." The release explicitly stated, however, that Franklin Chase's obligations under the ten-year limited warranty would remain in effect. The final purchase price was $335,685.00.

Over the next several years, the Kozikowskis' complaints about the home continued. On September 17, 1992, the Kozikowskis and Franklin Chase entered into yet another agreement under which Franklin Chase paid the Kozikowskis $4,479.74 with the

understanding that the Kozikowskis would use the money to repair chimney and fireplace problems. In turn, the Kozikowskis released both Franklin Chase and Toll Bros. from all claims relating to the home's fireplace and chimneys.

In November 1992, the Kozikowskis filed a complaint with the Town of Franklin alleging a number of problems in the home's construction. In February 1993, Allan Fraser, then the Town's Building Commissioner, inspected the property and found thirteen building code violations, including problems with the home's foundation, air circulation system, and certain parts of the home's above-ground construction. Fraser ordered Toll Bros. to submit a written proposal for specific corrective action to address the problems as well as a specific time schedule for accomplishing the work. Fraser communicated with both the Kozikowskis and Toll Bros. with regard to this set of building code violations. Through its engineering consultant, Toll Bros. submitted proposals to correct the violations. Fraser approved the proposals but wrote to the Kozikowskis that it was beyond his authority to determine whether Toll Bros. would actually follow through with the remedial work and that "it is really between you folks and Toll Bros. to work out mutually acceptable times and access for completion of these items."

Though Toll Bros. did resolve some of the Kozikowskis' complaints unrelated to the building code violations, it failed to

take care of the specific code violations that Fraser had identified. In 1994, the Kozikowskis threatened to file a formal complaint and contact the media in response to Toll Bros.'s failure to resolve their problems. Nothing immediately came of those threats. Later that year, Toll Bros. donated two thousand feet of paving to the Town, calling it an attempt "to help the Town with its increasing responsibilities due to residential development." In a report to the Town Council, however, the Town Administrator stated that Toll Bros. made the donation to resolve "some problems with the Building Inspection Department."[2] There was no public indication that the "donation" had anything to do with the Kozikowkis' complaints.

The situation with the Kozikowskis' home remained largely unresolved despite repeated demands by the Kozikowskis. In August 1997, they offered to release Toll Bros. from all claims in exchange for an "all-season room" off the back of the house. On August 21, 1997, in an apparent response to a written complaint that the Kozikowskis had filed, Robert Toll, Chairman and CEO of Toll Bros., wrote to the Kozikowskis that he had passed their letter on to senior management and "assured [them] that [they would] be treated fairly." On September 26, 1997, however, William

_____

[2]The district court itself considered this "donation," or what the Kozikowskis alleged to be a bribe, "grave and troubling." Kozikowski v. Toll Bros., Inc., 246 F. Supp.2d 93, 101 (D. Mass. 2003).

Gilligan, Toll Bros.'s vice-president, responded to the Kozikowskis' release offer and stated that Toll Bros. would neither build the all-season room nor "undertak[e] any additional corrective measures" because of the December 19, 1989 release agreement.

In January 1998, after members of the Kozikowski family experienced various illnesses, the Bay State Gas Company inspected the home, found high carbon dioxide levels, and advised the family not to use the fireplaces or any other wood-burning unit. The Kozikowskis contacted Gilligan, who despite his previous letter, suggested that the Kozikowskis schedule an appointment to inspect the problem and that if the problem was Toll Bros.'s responsibility, "we will correct it."

In July 1998, a second inspection of the home by the Town Building Commissioner, now Matthias Mulvey, revealed eighteen building code violations, many of them identical to the violations found in 1993. The Commissioner sent a letter to Toll Bros. advising them of the violations. Subsequently, the Norfolk County District Attorney brought a criminal complaint against Toll Bros., which was ultimately dismissed. On April 23, 2001, the Kozikowskis demanded relief from Toll Bros. under Massachusetts consumer protection laws. Settlement talks failed and the Kozikowskis commenced suit against Toll Bros. in superior court for (1) common law deceit, (2) deceit as a violation of Mass. Gen. L. ch. 93A, (3)

breach of express warranty, and (4) breach of express warranty in violation of Mass. Gen. L. ch. 93A.

Following removal of the case to federal court, Toll Bros. moved to dismiss the complaint as time-barred. On September 12, 2002, the district court held a hearing on Toll Bros.'s motion to dismiss and converted the motion to dismiss to a motion for summary judgment. Both parties agreed that such a conversion was appropriate, but the Kozikowskis requested the opportunity to conduct additional discovery to develop an equitable estoppel argument. The district court gave the Kozikowskis the next sixty days to conduct three depositions concerning their equitable estoppel claim and further instructed that, on the basis of these three depositions, they could supplement the record but solely on the issue of equitable estoppel. After receiving several extensions, the Kozikowskis provided the district court with a supplemental brief as well as various exhibits and one deposition, that of Matthias Mulvey. The court thereafter granted summary judgment in favor of Toll Bros. after ruling that all of the Kozikowskis' claims began accruing no later than 1993 and were therefore barred by applicable statutes of limitations. See 246 F. Supp.2d at 99. The court also rejected the Kozikowskis' equitable estoppel argument. See id. at 102.

## II. DISCUSSION

We review the district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmovant. Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir. 1997).

## A. Statute of Repose

Although the district court's decision did not address the applicability of the statute of repose, Toll Bros. raised the issue both in its motion to dismiss and here on appeal. Toll Bros. argues for affirmance pursuant to the six-year statute of repose for claims involving construction and improvement to real property. Mass. Gen. L. ch. 260, § 2B; see also Nett v. Bellucci, 269 F.3d 1, 5 (1st Cir. 2001) (federal courts sitting in diversity jurisdiction apply Massachusetts statute of repose, which is deemed substantive rather than procedural). We agree that § 2B applies to the Kozikowskis' two deceit claims and hence affirm their dismissal on that basis. § 2B provides in pertinent part:

> Actions of tort for damages arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property . . . in no event shall . . . be commenced more than six years after the earlier of the dates of: (1) the opening of the improvement to use; or (2) substantial completion of the improvement and the taking of possession for occupancy by the owner.

Mass. Gen. L. ch. 260, § 2B. The six-year deadline set forth in § 2B operates without regard to when a plaintiff discovers any injury allegedly caused by tortious activity by the architect or contractor at issue. See Klein v. Catalano, 386 Mass. 701, 702

-8-

(1982).  It serves the "well recognized public purpose" of protecting those engaged in the construction industry from defending claims brought against them long after evidence has dissipated and strikes "a reasonable balance between the public's right to a remedy and the need to place an outer limit on the tort liability of those involved in construction." Id. at 709-10.

The Kozikowskis' common law and statutory deceit claims sound in tort and arise out of the design and construction of the home.  In both claims, the Kozikowskis allege that Toll Bros. misrepresented that their home was constructed in compliance with state and municipal building codes and was safe and fit for occupancy.  The 93A deceit claim specifically alleges that Toll Bros. knowingly concealed and failed to inform the Kozikowskis of the building code defects.

The Kozikowskis argue that their deceit claim under ch. 93A is not barred by the statute of repose, because, as in Sullivan v. Iantosca, 409 Mass. 796, 800 (1991), the alleged "violation occurred in the sale of the house."  The Massachusetts Supreme Judicial Court in Sullivan reasoned that § 2B "grants protection to designers, planners, builders, and the like . . . [but not to] people who sell real estate." Id. at 799.  The Kozikowskis allege that Toll Bros. acted as both builder and seller of the property, and claim that, as the seller of the property, Toll Bros. violated ch. 93A by concealing known defects in the home.  Accordingly, the

Kozikowskis contend, their chapter 93A deceit claim should not be barred by the statute of repose.

In this transaction, Toll Bros. was the builder of the home. Franklin Chase is denoted as the "Seller" in the sale agreement, the December 19, 1989 release, and the resulting deed of the property. Toll Bros. itself is nowhere mentioned in any of these crucial instruments. It is, however, specifically listed as the applicant in the building permit and certificate of occupancy as one would expect. Importantly, the Kozikowskis made no effort below to pierce the corporate veil between Franklin Chase and Toll Bros., or otherwise prove that Toll Bros. was the seller of the home.

Accordingly, we assess whether the statute of repose began to run for the deceit claims against Toll Bros. solely in its capacity as the builder of the house and not as seller. Toll Bros. argues that "the opening of the improvement to use" took place on December 14, 1989, when the Town issued the Certificate of Occupancy after inspecting the home. Five days later, "substantial completion of the improvement and the taking of possession for occupancy by the owner" occurred at the sale closing and title transfer, immediately after which the Kozikowkis moved into the home. The Massachusetts Supreme Judicial Court has ruled that the statute of repose begins to run when a Certificate of Occupancy is

issued and the owners move into the home.  See Aldrich v. ADD, Inc., 437 Mass. 213, 221-22 (2002).

We agree.  According to § 2B, Toll Bros. was therefore subject to tort liability in connection with its construction of the home only until, at the latest, December 19, 1995.  The deceit claims, filed in November 2001, since they arise solely out of Toll Bros.'s actions as builder, and not seller, are hence time-barred by the statute of repose.

## B. Statutes of Limitation

The district court held that all of the Kozikowskis' claims, both for breach of warranty and deceit, were time-barred. Because we dispose of the Kozikowskis' two deceit claims as barred by the statute of repose, see supra, we examine the Massachusetts statutes of limitation applicable only to the breach of express warranty claims.[3]  See, e.g., Pitts v. Aerolite SPE Corp., 673 F. Supp. 1123, 1127 (D. Mass 1987) (federal courts sitting in diversity jurisdiction apply state statutes of limitation).

Under chapter 93A, "unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared

---

[3]As for the ten-year warranty referenced in the sale agreement, the warranty agreement itself is not in the record.  We do not know, for example, whether the warranty contained a "claims made" clause, "discovery" provision, or some other independent obligation between the parties that would have affected our application of the statutes of limitation.  We assume arguendo that the Kozikowskis do have express warranty claims not subject to the statute of repose, and address the limitations period for express warranty claims.

-11-

unlawful." Mass. Gen. L. ch. 93A, § 2(a). The Kozikowskis argue that Toll Bros.'s alleged breach of warranty constitutes an unfair or deceptive act covered by chapter 93A. The statute of limitations for 93A claims is four years from the accrual date. Mass. Gen. L. ch. 260, §5A. The statute of limitations for common law breach of warranty claims is six years. Mass. Gen. L. ch. 260, § 2. Breach of warranty actions start accruing when the plaintiff knew or reasonably should have known of the breach. See Anthony's Pier Four, Inc. v. Crandell Dry Dock Eng'rs, Inc., 396 Mass. 818, 826 (1986). In both breach claims, the Kozikowskis allege that Toll Bros. breached its express warranty that the home would comply with the state building code. The district court held that both claims, at the latest, started accruing in 1993, when the Kozikowskis were notified by the Town of their home's thirteen building code violations, and were hence time-barred.

The Kozikowskis contend that the applicable statutes of limitation did not begin to run until July 3, 1998, when Mulvey inspected the home. They claim that until then, they did not know or have reason to know that the home had such major structural defects as to mean it could not be occupied. The building code violations cited in the 1993 inspection by Fraser, they contend, were just "minor" and did not point to major defects in the home's construction.

As an initial matter, the Kozikowskis argue this issue for the first time here on appeal; hence, we deem it waived. See Sierra Fria Corp. v. Donald J. Evans, P.C., 127 F.3d 175, 183 (1st Cir. 1997) (noting appellant waived argument for the first time on appeal by failing to present it below); Villafane-Neriz v. Fed. Deposit Ins. Corp., 75 F.3d 727, 734 (1st Cir. 1996) (except in "'horrendous cases where a gross miscarriage of justice would occur,'" "this court will not consider an argument presented for the first time on appeal") (internal citations omitted). Toll Bros., in its August 20, 2002 Reply Memorandum in Support of Defendant's Motion to Dismiss, warned, "Defendant Toll . . . submits this reply memorandum to address plaintiffs' misplaced reliance on . . . the doctrine of equitable estoppel. Indeed, plaintiffs devote nearly the entirety of their . . . Opposition . . . to this doctrine, and, in so doing, tacitly concede that absent its application, all of their claims are barred by the applicable statutes of limitations." The Kozikowskis' Supplemental Brief in Opposition to Defendant's Motion to Dismiss continued to fail to challenge Toll Bros.'s position that the claims began accruing in 1993 or earlier. In turn, the district court stated, "The Kozikowskis have not disputed that the statutes of limitations began to run on their claims in 1993. Rather, they have responded to Toll Bros.'s invocation of the statutes of limitations on their

four claims by invoking the doctrine of equitable estoppel." 246 F. Supp.2d at 99.

Even if the Kozikowskis had not waived their challenge of the accrual date and were we to assume the issue was forfeit and subject to plain error review, there was no plain error. The record shows that the Kozikowskis were put on notice of construction and structural defects in their home as far back as the year of their purchase. In 1989, as evidenced by the December 19 release, the Kozikowskis complained about alleged construction deficiencies even before moving into the house. In their 1992 letter to the Town Administrator, they complained about "outright mistreatments" by Toll Bros. and outlined a long list of alleged "building deficiencies" which included numerous "unresolved," "partially resolved," and "inadequately resolved" construction problems. In the same letter, the Kozikowskis went so far as to suggest that criminal charges for fraud and misrepresentation should be brought against Toll Bros. In Fraser's 1993 letter to Toll Bros. notifying the company of the building code violations, it was made clear that the Kozikowskis were aware of the violations explicitly referenced in the letter; moreover, Fraser sent a copy of this letter to the Kozikowskis themselves. Their claim that Fraser's 1993 report contained just "minor" problems with the home is disingenuous and incorrect. Mulvey's 1998 report on which they base their argument sets forth many of the same violations--defects

in fireplace and insulation systems among them--that Fraser listed after his 1993 inspection. The record is replete with explicit and implicit acknowledgments by the Kozikowskis that they knew or learned about alleged construction deficiencies and building code violations between 1989 and 1993. Significantly, many of the serious defects reported in 1998 were in the 1993 report.

**C. Equitable Estoppel**

Though the Kozikowskis failed to dispute below that the statutes of limitations began to run on their breach of warranty claims in 1993 and not in 1998, they did invoke the doctrine of equitable estoppel. Under equitable estoppel, a plaintiff can "escape the consequences of his lack of diligence in bringing his action . . . by way of proof that the defendants lulled the plaintiff into the delay." Coady v. Marvin Lumber and Cedar Company, 167 F. Supp.2d 166, 171 (D. Mass. 2001).

For the doctrine to apply, the Kozikowskis must satisfy a three-part test, showing: (1) that Toll Bros. made representations that it knew or should have known would induce the Kozikowskis to postpone bringing a suit; (2) that they did in fact delay bringing a suit in reliance on those representations; and (3) that reliance on those representations was reasonable. O'Blenes v. Zoning Bd. of Appeals of Lynn, 397 Mass. 555, 558 (1986).

The Kozikowskis argue that (1) a March 24, 1993 letter from Fraser to Toll Bros.; (2) a July 27, 1993 letter from Fraser

to the Kozikowskis; (3) the fact that Toll Bros. continued to schedule repair work on the home through 1996 and 1997; and (4) the August 21, 1997 letter from Toll Bros. stating that the Kozikowskis would be treated fairly all constituted "representations" that Toll Bros. knew or should have known would induce the Kozikowskis into postponing suit.

The district court held that "even construing the facts in the light most favorable to the Kozikowskis, it is far from clear that the representations that they have identified on the part of Toll Brothers satisfy the first prong" of an equitable estoppel argument. 246 F. Supp.2d at 100. The March 24, 1993, and July 27, 1993 letters by Fraser did indicate that Toll Bros. was making plans to resolve the home's problems. Neither Fraser nor Toll Bros., however, made any clear assurances that Toll Bros. intended to carry out these plans. In fact, Fraser told the Kozikowskis that it was up to the Kozikowskis themselves to make sure that Toll Bros. followed through on their plans.

Moreover, the three letters as well as any alleged suggestions by Toll Bros. that it would schedule repairs were very general in nature and did not specifically assure the Kozikowskis that the repairs in fact would be made. Promises or assurances in such communications must be specific in order to constitute "representations." See Treadwell v. John Hancock Mut. Life Ins. Co., 666 F. Supp. 278, 286-87 (D. Mass. 1987); Buker v. Nat'l Mgmt.

-16-

Corp., 16 Mass. App. Ct. 36, 43-44 (1983) (unreasonable as a matter of law to rely on vague assurances).  Here, the only specific assurances that Toll Bros. made were that they were considering the building code violations listed in Fraser's report and that Toll Bros. representatives would be available to the Kozikowskis to discuss their problems.  In addition, alleged repair appointments by Toll Bros. do not, standing alone, constitute "representations" for purposes of equitable estoppel.  See New England Power Co. v. Riley Stoker Corp., 20 Mass. App. Ct. 25, 34 (1985) (stating "[w]e do not view the fact of honest, genuine repair efforts, standing alone, as sufficient basis for application of the doctrine of estoppel"), rev. denied, 395 Mass. 1103 (1985).

On the second prong, the district court found that "given the long and rocky course of the relationship" between the two parties, the notion that the Kozikowskis "truly believed" Toll Bros. and "were thus lulled into inaction . . . strains credulity." 246 F. Supp.2d at 101.  The record shows that the Kozikowskis regarded Toll Bros. as unreliable, beginning with their first letter in 1992 to the Town Administrator.  The letter notified the Town that the Kozikowskis "would like to file a complaint with the town against Toll Brothers in the hope that, ideally, they are no longer allowed to build in Franklin" and that they "think that charges of criminal misconduct--fraud and misrepresentation--should be brought against this builder."

After Fraser inspected the home and issued his report, the Kozikowskis' distrust of Toll Bros. continued in 1994 when they threatened to file a formal complaint and contact the media. In the Kozikowskis' own words, they were "completely frustrated and upset because neither [Town] Commissioner Fraser nor Toll Brothers was responding to their fully justified complaints . . . ." Given this string of complaints and threats by the Kozikowskis, it is difficult to believe that Toll Bros.s' assurances, to the extent that they were assurances, truly lulled the Kozikowskis into inaction.

On the third prong, the district court concluded that construing the facts in the light most favorable to the Kozikowskis, any delay in reliance on the alleged representations could not have been reasonable given Toll Bros.'s behavior and the Kozikowskis' own threats. See 246 F. Supp.2d at 102. Though it is arguable that the Kozikowskis succeed on the first two prongs, the Kozikowskis fail to establish how their alleged reliance on Toll Bros.'s representations was reasonable.

The Kozikowskis' reliance on the August 21, 1997 letter from Robert Toll was unreasonable because it was received one month before the September 26, 1997 letter from Gilligan, which stated that "Toll Brothers will not be building an all-season room as you have requested, nor will we be undertaking any additional corrective measures on your home." Gilligan's letter did not

-18-

provide any assurances that Toll Bros. would remedy their grievances, but instead explicitly set out that Toll Bros.'s previous attempts to repair minor problems with the home were performed despite the warranty agreement and release that insulated the company from any legal obligation to do so.

In light of the Kozikowskis' continuous attempts to use outside sources to pressure Toll Bros. into action and Toll Bros.'s continuous failure to satisfy the Kozikowskis' demands, the Kozikowskis' alleged reliance on Fraser's letters and Toll Bros.'s correspondence is unreasonable. As the district court noted:

> The fact that [the defendant] "did not make an honest or good faith effort at anytime to remedy the defects," as [the plaintiff] alleges, does not establish that [the defendant] induced the delay. Instead, because [the defendant] was unwilling to take responsibility for the defects, [the plaintiff] was (or should have been) put on notice that a claim (or a lawsuit) was the only way to resolve the dispute.

246 F. Supp.2d at 102 (quoting Coady, 167 F. Supp.2d at 171). Here, as far back as 1994, when Toll Bros. failed to fully respond to the Kozikowskis' serious threat to sue, the Kozikowskis had more than enough signals that the only way they were going to have their grievances redressed was through legal action.[4] We therefore

---

[4]As for the Kozikowskis' mention of the alleged bribes made to Town officials, we cannot see how statements made by Toll Bros. to Town officials constitute representations that Toll Bros. knew or should have known would induce the Kozikowskis into forgoing suit. Though "[t]he circumstances surrounding the so-called 'bribe' might be suggestive of foul play, . . . foul play is not in itself sufficient to warrant raising an estoppel." Sousa v. BP Oil, Inc., No. 83-4046-DPW, 1995 WL 842003, at *5 (D. Mass. Sept. 12, 1995).

affirm the district court's finding that the Kozikowskis failed to carry their burden of satisfying the three elements of equitable estoppel.

## D. "Mandatory Discovery" Under Fed. R. Civ. P. 26(a)

We review the district court's denial of discovery for an abuse of discretion. Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 244 F.3d 189, 191-92 (1st Cir. 2001). The Kozikowskis contend that the district court abused its discretion by denying their request for "mandatory" discovery under Fed. R. Civ. P. 26(a). Here, Rule 26(a) never came into play because at the outset, the district court conducted a hearing on Toll Bros.'s motion to dismiss which, without objection from either party, it converted to a motion for summary judgment. Upon this conversion, Fed. R. Civ. Pro. 56(f) instead was invoked. Rule 56(f) provides that where affidavits of the party opposing summary judgment are insufficient to present facts that are essential to the party's opposition, the court may refuse the summary judgment motion or may order a continuance to permit either party to obtain additional affidavits, conduct depositions, or conduct any other discovery. See Fed. R. Civ. Pro. 56(f).

The Kozikowskis requested discovery at the September 12, 2002 hearing on Toll Bros.'s motion to dismiss. The district court

---

Moreover, nowhere in the record can we find that the Kozikowskis even knew about the alleged bribe at the relevant time period, much less relied on it.

granted them sixty days to conduct three depositions, but they managed to conduct only one, of former Town Building Commissioner Mulvey. The Kozikowskis chose to rest on the Mulvey deposition and submitted a supplemental brief incorporating his testimony in opposition to Toll Bros.'s motion to dismiss-motion for summary judgment.

According to Rule 56(f), a court may grant a continuance to permit additional discovery if the party opposing summary judgment asks the court for such relief, demonstrates that it was diligent in pursuing discovery before summary judgment surfaced, and sets forth a "plausible basis for believing that the specified facts, . . . if adduced, will influence the outcome of the pending summary judgment motion." C.B. Trucking, Inc. v. Waste Mgmt., Inc. 137 F.3d 41, 44 (1st Cir. 1998); Fed. R. Civ. P. 56(f). Again, their argument for mandatory discovery under Rule 26(a) is misplaced, as the Kozikowskis consented to the district court's conversion of Toll Bros.'s motion to dismiss to a motion for summary judgment, thereby bringing any further discovery requests within the ambit of Rule 56. Here, the Kozikowskis have not explained why they could not conduct the three depositions during the time for which they asked, nor have they demonstrated whether certain facts, if brought up on additional discovery, would influence the outcome of the motion. Hence, we find that the

district court did not abuse its discretion in denying the Kozikowskis further discovery under either Rules 26(a) or 56(f).

Unfortunately, for the Kozikowskis they simply waited too long before seeking legal redress for their complaints.

Accordingly, we <u>affirm</u>.